```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ERICA HECKLE,                                                 :
                              Plaintiff,                      :
                                                              :      OPINION AND ORDER
v.                                                            :
                                                              :      21 CV 1463 (VB)
MATRIX ABSENCE MANAGEMENT, INC.,                              :
                              Defendant.                      :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Erica Heckle brings this purported class action against defendant Matrix Absence Management, Inc., claiming defendant misclassified her and other "telephonic claims examiners" as exempt from overtime requirements under the New York Labor Law ("NYLL") and failed to provide proper wage statements in violation of NYLL Section 196. Plaintiff also brings an individual claim alleging defendant misclassified her as exempt from the overtime provisions of the Fair Labor Standards Act.

Now pending is plaintiff's motion for class certification on her NYLL claims and for appointment of class counsel. (Doc. #41). For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The parties have submitted briefs and declarations with supporting exhibits, which reflect the following factual background.

Defendant is a third-party administrator that processes short-term disability ("STD") and leave of absence ("LOA") claims on behalf of companies that provide disability benefits and paid or unpaid leave to their employees. Defendant does not issue insurance policies or fund insurance policies; rather, it reviews claims submitted by its customers' employees to determine whether such claims should be approved under the customers' insurance plans.

1

Plaintiff worked as a Telephonic Claims Examiner ("TCE") in defendant's Hawthorne, New York, office from November 2010 to November 2020.[1]

TCEs are responsible for reviewing STD and LOA claims submitted by employees of their assigned customers. Each TCE works on a team of approximately ten to fifteen TCEs who all report to a common supervisor.

A TCE's job title reflects the type of claims they process: a Claims Examiner-LOA processes only LOA claims; a Claims Examiner-STD processes only STD claims; and a Claims Examiner-AMS[2] processes both LOA and STD claims. Each TCE is also assigned a "proficiency" level: level 1, level 2, or senior. Plaintiff's title was Senior Claims Examiner-AMS.

A TCE's proficiency level depends on how much experience the TCE has and dictates when a supervisor will review the TCE's decision to approve a claim: a supervisor will review approval decisions by a level 1 TCE that exceed $1,000, approval decisions by a level 2 TCE that exceed $1,500, and approval decisions by a senior TCE that exceed $2,500.

A supervisor reviews all determinations to deny a claim, regardless of the TCE's proficiency level. A supervisor also audits approximately two claims per month of each TCE they oversee, regardless of proficiency level.

An individual TCE will generally handle anywhere from 115 to 300 claims at a time, depending on the type of claims the TCE processes. For example, a TCE who processes only STD claims may handle approximately 125 claims at a time, whereas a TCE who processes only

---

[1] As used in this Opinion and Order, TCE refers to Telephonic Claims Examiners working in defendant's Hawthorne office, including those who work remotely but report to the Hawthorne office.

[2] "AMS" is short for Absence Management Specialist.

LOA claims may handle 300 claims at a time, and a TCE who processes both may handle 115 claims at a time.

TCEs are not required to have any specific education, licenses, or certifications, although the job description for a Senior Claims Examiner-AMS states a "[c]ollege degree [is] preferred or an equivalent of at least three to five years of claims experience." (Doc. #62-5 at ECF 3).[3] The duties of a TCE depend on whether they are processing a STD or LOA claim, and are set forth in a document entitled Matrix Absence Management, Inc. – Best Practices (Doc. #43-4 (the "Matrix Best Practices")).

TCEs "have autonomy to manage" claims assigned to them (Doc. #62-2 ("Mehiel Dep. Tr.")[4] at 32), but must make decisions according to the terms of the customer's insurance policies, applicable law, the Matrix Best Practices, and other standard operating procedures provided to TCEs to guide claims management. TCEs are also provided short "cheat sheets" summarizing each customer's insurance plan to help TCEs determine claimants' eligibility under the plan.

The Matrix Best Practices sets forth the steps TCEs should take when reviewing claims and the timelines for completing each step. For example, TCEs must determine, within one business day, whether an incoming claim meets minimum eligibility requirements, and then must notify the claimant and customer within one business day of that determination. If a claim meets minimum eligibility requirements, certain documentation is then collected from the claimant.

The TCE reviews the documentation to determine the claimant's eligibility and checks

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[4] Citations to "Tr. at _" refer to the page number at the top right-hand corner of each transcript page.

for indications of fraud, such as obvious inconsistencies in how a claimant and the claimant's employer each describe an accident that give rise to a claim.

If the documentation supports the claimant's eligibility, the TCE approves the claim.[5]  If the documentation is insufficient or late, the Matrix Best Practices dictates how the TCE should proceed, including how many times the TCE may attempt to reach the claimant or provider, and on what timeframe.

To determine the appropriate amount of leave on STD claims, TCEs input the diagnosis code from the claimant's health care provider into a software programmed with the Official Disability Guidelines, which generates a duration based upon that diagnosis.  When a claimant requests leave greater than twice the duration generated by the software, the TCE consults a nurse case manager to determine whether the longer requested leave period is appropriate given the medical information submitted.  Plaintiff testified that TCEs defer to the nurse case managers' determinations, and that TCEs cannot approve a claim with a leave period longer than the dictated duration unless the nurse case manager agrees.

If a TCE determines a claim is ineligible under the applicable policy, they will deny the claim.  If the supervisor approves the decision to deny, the TCE prepares a standard denial letter using a template.

If a TCE determines a claim is eligible under the policy, they will approve the claim and create a "plan of action," a benefit worksheet (for STD claims), and an approval letter based on existing templates.  (Matrix Best Practices at ECF 5–6).  If the claim amount exceeds the limit

---

[5]   A TCE reviewing a claim seeking leave under the federal Family Medical Leave Act ("FMLA") must determine whether the claimant's condition constitutes a "serious health condition" under the FMLA and whether it substantially interferes with the claimant's ability to work.  (Matrix Best Practices at ECF 10; Doc. #62-3 ("Pl. Dep. Tr.") at 98–104).

for the TCE's proficiency level, a supervisor must review the TCE's approval the same day or no later than two days after complete claim information is received.

Finally, the TCE maintains contact with the claimant by phone and email regarding the claimant's anticipated return to work after leave.  The Matrix Best Practices dictates what steps the TCE should take during the "return-to-work" process and the deadlines for each step based on whether the claimant anticipates returning to work on time, returning to work with an accommodation, or requesting an extension.

Defendant classifies all TCEs as "bona fide . . . administrative" employees exempt from the NYLL requirements.  N.Y. Lab. Law § 651(5)(b).  Because TCEs are compensated as salaried employees, defendant does not track whether TCEs work more than forty hours per week, and the biweekly wage statements issued to TCEs indicate they worked eighty hours during each two-week pay period, regardless of the actual number of hours worked.

Plaintiff seeks to certify a class of "[a]ll current and former Telephonic Claims Examiners employed by Defendant from February 18, 2015, to the final date of judgment in Defendant's Hawthorne, New York office (whether in-person or remotely from home)."  (Doc. #42 ("Pl. Mem.") at 1).

## DISCUSSION

I.  <u>Legal Standard</u>

To qualify for certification, a plaintiff must demonstrate by a preponderance of the evidence that the putative class meets the four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).[6] The Second Circuit also requires a plaintiff to demonstrate compliance with a fifth requirement respecting class ascertainability. In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006). If the plaintiff meets these five criteria, he or she must also demonstrate by a preponderance of the evidence that the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 345.

The Supreme Court has cautioned that "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350. Instead, "[t]he party seeking class certification must affirmatively demonstrate compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350–51). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast Corp. v. Behrend, 569 U.S. 27, 33–34 (2013). However, merits inquiries at the class certification stage may be considered only to the extent "they are relevant to determining whether the Rule 23 prerequisites" are met. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465–66 (2013).

II.   Rule 23(a) and Ascertainability Factors

A.   Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." In this Circuit, this requirement is met by a class of forty or more members.

---

[6]   Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

6

See Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Here, defendant's representative testified that approximately 150 TCEs report to the Hawthorne office. (Doc. #43-1 ("Tavares Dep. Tr.") at 131). Defendant does not contest that the proposed class is sufficiently numerous. Accordingly, the proposed class meets the numerosity requirement.

B. Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." "Commonality is satisfied where a single issue of law or fact is common to the class." In re IndyMac Mortg.-Backed Sec. Litig., 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 359). Therefore, commonality under Rule 23(a)(2) is a "low hurdle." See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 131 (S.D.N.Y. 2014). Nevertheless, class certification requires not only "common questions," but "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350.

Here, common questions with the potential to generate common answers abound, including whether defendant requires or permits TCEs to work over forty hours per week, what TCEs' primary job duties are, whether defendant provided the TCEs with the requisite wage statements, and whether the TCEs' duties as described in the Matrix Best Practices consist of "work directly related to management policies or general operations of" defendant pursuant to the administrative exception. 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(ii); see Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (commonality satisfied when the job duties of employees who claimed they were improperly classified as exempt were set forth in a single guide).

Accordingly, the proposed class meets the commonality requirement.

C.     Typicality

Rule 23(a)(3) requires that "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson v. Metro-N. Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001), abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 360. "[M]inor variations in the fact patterns underlying individual claims" do not preclude a finding of typicality "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir. 1993). Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. at 132.

Here, plaintiff's claims and those of the proposed class members arise from defendant's decision to classify all TCEs as overtime exempt administrative employees. Each class member will make similar legal arguments that their job function of reviewing claims is neither directly related to the management policies or general operations of defendant nor involves the customary and regular exercise of discretion and independent judgment. These disputed issues are as central to the named plaintiff's claim as to the other class members' claims. Accordingly, the proposed class meets the typicality requirement.

That plaintiff, as a senior TCE, would be subject to supervisor review of claim approvals over $2,500 (versus $1,000 or $1,500 for TCEs with different proficiency levels), that TCEs were assigned different customers, or that plaintiff may have engaged in more mentoring of new

8

employees does not make plaintiff's claims atypical of the class when, as here, all class members have the same role as a claims examiner, report to the same office location, are paid on a salaried basis, and are subject to the same overtime policy. See Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 164 (S.D.N.Y. 2014). Likewise, that plaintiff may have worked more overtime than other class members does not make her atypical—it only means she may be entitled to more damages. Id.

Accordingly, plaintiff satisfies the typicality requirement.

D. Adequacy

Under Rule 23(a)(4), the Court must examine whether the named plaintiff's interests "are antagonistic" to those of the other proposed members of the class. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997). Put another way, class representatives must have a "sufficient interest in the outcome" of the case "to ensure vigorous advocacy." See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 413 (S.D.N.Y. 2004). The named plaintiff must also have attorneys who are "qualified, experienced and generally able to conduct the litigation." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992).

For the reasons discussed above regarding commonality and typicality, plaintiff has sufficiently shown she is an adequate representative of the class. Moreover, plaintiff has demonstrated her commitment to litigating the case by assisting with the investigation, including supplying her attorneys with documents, and sitting for a lengthy deposition. Nothing in the

record suggests plaintiff's interests are antagonistic to those of the proposed class members. Defendant's suggestion that plaintiff "lacks personal knowledge regarding how the purported class members performed their duties on a daily basis" (Doc. #60 ("Def Mem.") at 21), is irrelevant to adequacy. Plaintiff need not stand over her colleagues' shoulders, monitoring their daily performance, to adequately represent their interests.

In addition, plaintiff has shown her attorneys are experienced and qualified class action lawyers who specialize in wage and hour actions, including those alleging misclassification. The resumes of the firms representing plaintiff (Docs. ##43, 44, 45) show each firm has been appointed class counsel in several different cases in federal courts, and that Molly A. Elkin, Esq., of McGillivary Steele Elkin LLP, "has won multi-million dollar verdicts or recoveries" on behalf of a class. See Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 566 (S.D.N.Y. 2014), denying reconsideration, 2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014).

Accordingly, plaintiff and her counsel satisfy the adequacy requirement.

E.     Ascertainability

The Second Circuit has recognized a fifth pre-condition to class certification: "[t]he implied requirement of ascertainability." In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 30. "To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 229 (S.D.N.Y. 2010). "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." Ebin v. Kangadis Food Inc., 297 F.R.D. at 567.

Here, defendant does not dispute the ascertainability of the class, and the Court finds plaintiff's proposed class, TCEs reporting to defendant's Hawthorne office during a discrete time

period, will be ascertainable through defendant's employment records. Therefore, the proposed class meets the ascertainability criteria.

In sum, plaintiff has satisfied all four requirements of Rule 23(a) and the additional implied requirement of ascertainability.

III.   Rule 23(b)

In addition to satisfying Rule 23(a), a "district court must be satisfied that certification is appropriate under Rule 23(b)." Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015). Here, plaintiff seeks certification of a class under Rule 23(b)(3).

Rule 23(b)(3) provides for certification when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Defendant argues plaintiff cannot show common questions or law or fact predominate because applicability of the administrative exemption must be determined on an individual basis due to differences in the way TCEs perform their jobs. These differences include each TCE's claim volume, supervisor, threshold for supervisor review of an approval, assigned clients, the type of claims they examine, the resources they use in handling claims (including consultation with a nurse case manager), and engagement in mentoring activity or special projects.

The Court disagrees.

A.   Predominance

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. at 459. However, a district court has a "duty to take a

close look at whether common questions predominate over individual ones." Comcast Corp. v. Behrend, 569 U.S. at 34. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). Accordingly, this inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id.

"[T]he question of entitlement to overtime pay is answered by examining the employee's actual duties." Myers v. Hertz Corp., 624 F.3d 537, 550 (2d Cir. 2010). Thus, "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria," while "not necessarily . . . dispositive of the overall predominance inquiry, . . . will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class." Id. at 549. Importantly, "Rule 23 does not impose upon plaintiffs the impossible task of showing that all class members have identical job responsibilities." Romero v. H.B. Auto. Grp., Inc., 2012 WL 1514810, at *19 (S.D.N.Y. May 1, 2012). Instead, "[c]ertification is appropriate when the evidence shows that the job duties of the putative class members were largely consistent or when the [evidence] . . . relating to their specific job duties is generalizable." Id. (emphasis in original).

Here, plaintiff has submitted evidence showing the proposed class members have materially similar duties, and all members report to the same office location. All TCEs are subject to supervisory review whenever they either deny a claim or approve a claim above a specified threshold, and a supervisor audits two claims per month for every TCE. Class-wide proof in the form of the Matrix Best Practices and other standard operating procedures, the job

12

postings for TCE positions, the templates TCEs use when processing claims (including those specific to certain clients or types of claims), plaintiff's testimony, and the testimony of defendant's representatives will bear on whether TCEs qualify for the administrative exemption.

Moreover, defendant's blanket policy exempting all TCEs from the NYLL's overtime provisions—regardless of the type of claims they handle or their proficiency level—suggests defendant "believes some degree of homogeneity exists among the employees, and is thus in a general way relevant to the inquiry here." Myers v. Hertz Corp., 624 F.3d at 549.

Accordingly, the Court concludes plaintiff has met her burden to show the job duties of the putative class members are largely consistent such that common questions surrounding exemption will predominate over individual ones. To the extent there are differences in how individual TCEs perform their jobs, "there is no evidence that they are of such a magnitude as to cause individual issues to predominate." Damassia v. Duane Reade, Inc., 250 F.R.D. at 160 ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.") (collecting cases).

Defendant overstates the degree to which the evidence shows differences among the proposed class members' job duties or how TCEs exercise their role. That a senior TCE can approve claims seeking $1,000 more in STD benefits than a level 2 TCE without automatic supervisor review, or that TCEs may consult nurse case managers in deciding whether to approve a claim when the Matrix Best Practices do not require such consultations, go to the merits of whether the job function of a TCE involves exercising independent judgment warranting exemption. These facts, without more, do not suggest individual TCEs' duties vary

significantly in respects relevant to whether plaintiff "has presented a claim that is capable of classwide resolution." Cuevas v. Citizens Fin. Grp., Inc., 526 F. App'x 19, 21 (2d Cir. 2013) (summary order).

Likewise, that plaintiff may have spent more time mentoring newly hired employees than other TCEs does not mean individual questions will predominate the exemption analysis. Instead, "[t]he crux of the inquiry will be whether the [TCEs'] main activity" of claims examining "is exempt." Jackson v. Bloomberg, 298 F.R.D. at 166.

Finally, deposition testimony of defendant's employees who report to the Arizona office, collected as part of a separate misclassification suit, does not show individual issues predominate here. The duties of the Arizona employees have no bearing on the class plaintiff purports to represent—TCEs who report to defendant's Hawthorne office—and the putative class in the Arizona action covered "Claims Examination Employees . . . defined to include 22 job titles," which is far broader than the nine job titles potential class members could have here. See Weeks v. Matrix Absence Management Incorporated, 2022 WL 17104261, at *1 (D. Ariz. Nov. 21, 2022).

Accordingly, plaintiff has satisfied her burden to show that common questions answerable through generalized proof predominate over individual ones.

B.   Superiority

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, all four factors weigh in favor of class certification. When "proceeding individually would be prohibitive for class members with small claims," such as in the wage and hour context, "the class action device is frequently superior to individual actions." Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010). Although a misclassification action asserting federal and Oregon state law claims against defendant is pending in the District of Arizona, the risk of duplicative or overlapping outcomes for the class is minimal because the putative class here covers claims examiners reporting to defendant's Hawthorne office and brings NYLL claims. Moreover, "because the class is composed solely of individuals who worked in the New York metropolitan area, adjudication of the claims in this forum is desirable." Jackson v. Bloomberg, L.P., 298 F.R.D. at 169. Finally, the Court foresees no manageability issues given the modest size, and easy ascertainability of the members, of the potential class.

Thus, the Court finds the superiority requirement of Rule 23(b)(3) satisfied.

Having met her burden under Rule 23(a) and Rule 23(b)(3), plaintiff's motion for class certification is granted.

IV.     Appointment of Class Counsel

Plaintiff also seeks appointment of her attorneys as class counsel. Under Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

As discussed above, each firm representing plaintiff is experienced in class actions and specializes in wage and hour law, including misclassification suits. Counsel have already contributed significant effort to prosecuting plaintiff's claims, including "participation in

meetings with the Named Plaintiff, preparing the Complaint, preparing the mediation statement, analyzing documents and records produced by Plaintiffs, preparing for and participating in mediation, and preparing for and participating in" depositions, as well as litigating this motion. (Doc. #44 ¶ 2). The lawyers who submitted declarations in support of appointment are managing or named partners of their firms, and the Court concludes, based on their declarations, that counsel will commit significant resources to representing the class.

Therefore, plaintiffs' attorneys are appointed as class counsel pursuant to Rule 23(g).

## CONCLUSION

Plaintiff's motion for class certification on her NYLL claims and appointment of class counsel is GRANTED.

All counsel are directed to appear for a status conference on **January 31, 2023, at 10:00 a.m.,** in Courtroom 620 at the White Plains Courthouse. By January 24, 2023, the parties are directed to submit (i) a joint letter addressing all case management issues going forward, including inter alia a proposed schedule for the completion of discovery on the merits of plaintiff's claims, and (ii) a joint proposed claim notice.

The Clerk is instructed to terminate the motion. (Doc. #41).

Dated: December 14, 2022
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge