**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Erica Heckle, | |
| Plaintiff, | Case No.  7:21-cv-1463 VB |
| v. | |
| Matrix Absence Management, Inc., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Molly A. Elkin
Sarah M. Block
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Tel.: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
smb@mselaborlaw.com

Travis M. Hedgpeth
Texas Bar No. 24074386
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Tele.: (281) 572-0727
travis@hedgpethlaw.com

Jack Siegel
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
5706 E Mockingbird Lane, Suite 115
Dallas, Texas 75206
Tel.: (214) 790-4454
jack@siegellawgroup.biz

*Counsel for Plaintiff and the Class*

Evan B. Citron
Jamie Haar
Ogletree, Deakins, Nash, Smoak
        & Stewart, P.C.
599 Lexington Ave., 17th Floor
New York, NY 10022
Phone: (212) 492-2068
Fax: (212) 492-2501
evan.citron@ogletreedeakins.com
jamie.haar@ogletreedeakins.com

*Counsel for Defendant*

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II.  BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

III.  SUMMARY OF PROPOSED SETTLEMENT AGREEMENT ..................... 3

IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE RULE 23 CLASS ACTION SETTLEMENT ................................................................... 4

   A.  Legal Standard for Class Action Settlement Approval ......................... 4

   B.  The Settlement Satisfies the Requirements of Rule 23(e)(2) and the *Grinnell* Factors ................................................................................................... 6

       1.  *Adequacy of Representation* ................................................. 6

       2.  *Existence of Arm's Length Negotiations* ............................. 7

       3.  *Adequacy of Relief (and Grinnell Factors 1, 4, 5, and 6)* .............. 8

           a.  Costs, Risks, and Delay of Trial and Appeal ...................... 8

           b.  Effectiveness of the Proposed Method of Distributing Relief ................. 10

           c.  The Terms of Any Proposed Attorneys' Fees Award ................. 12

       4.  *Equitableness of Treatment of Class Members* ................................. 13

       5.  *Reaction of the Class (Grinnell Factor 2)* ........................... 13

       6.  *Stage of the Proceedings and Amount of Discovery Completed (Grinnell Factor 3)* ................................................................................. 14

       7.  *Defendant's Ability to Withstand Greater Judgment (Grinnell Factor 7)* ....... 14

       8.  *Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)* ........ 15

   C.  A Class Has Already Been Certified Under Rule 23(a) and (b)(3) .................... 17

   D. The Service Award to Class Representative Heckle Should be Approved..........17

V.  PLAINTIFF'S FLSA SETTLEMENT SHOULD BE APPROVED ........................... 19

VI.  PROPOSED SETTLEMENT NOTICE ........................................................ 20

VII.  CONCLUSION ......................................................................................... 21

**TABLE OF AUTHORITIES**

**Cases**

*Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ...... 12

*Ayzelman v. Statewide Credit Servs. Corp.,* 242 F.R.D. 23 (E.D.N.Y. 2007) .............................. 10

*Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) .................................................... 12

*Bourlas v. Davis Assocs.,* 237 F.R.D 345 (E.D.N.Y. 2006) .......................................................... 5

*Caballero v. Zaloumis Contracting Service, Inc.,* 2013 WL 646656 (S.D.N.Y. Feb. 20, 2013).. 11

*Chang v. Philips Byrant Park LLC,* 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020) ......................... 21

*Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) ...................................... 19

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ........................................... 6, 8, 20

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91 (2d Cir. 2007) .................. 6

*Fisher v. SD Prot. Inc.*, 948 F.3d 593 (2d Cir. 2020) ................................................................... 19

*Flores v. Anjost Corp.*, 2014 WL 321831 (S.D.N.Y. 2014) ......................................................... 18

*Gervacio v. ARJ Laundry Servs. Inc.,* 2019 WL 330631 (S.D.N.Y. Jan. 25, 2019) .................... 16

*Henry v. Little Mint, Inc.*, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) .................................... 18

*Hernandez v. Between the Bread 55th Inc.,* 496 F. Supp. 3d 791 (S.D.N.Y. 2020) ..................... 5

*Hernandez v. Loco 111 Inc.,* 2017 WL 6205809 (S.D.N.Y. Dec. 5, 2017) ................................ 16

*In re AOL Time Warner, Inc.*, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................. 14

*In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...................................... 15

*In re Credit Default Swaps Antitrust Litig.,* 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ......... 10

*In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................. passim

*In re LIBOR-Based Fin. Instruments Antitrust Litig., 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016)* ............................................................................................................................................... 5

*In re Payment Card Interchange Fee and Merchant Discount Antitust Litig.,* 330 F.R.D. 11, 28
   (E.D.N.Y. 2019) ............................................................................................................. 5, 9, 10

*In re Petrobras Securities Litig.,* 317 F. Supp. 3d 858 (S.D.N.Y. 2018) ..................................... 5

*In re Vitamin C Antitrust Litig.,* 2012 WL 5389514 (S.D.N.Y. Oct. 23, 2012) ......................... 14

*In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................... 10

*Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362 (S.D.N.Y. 2013) ................................. 19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* 2009 WL 5851465 (S.D.N.Y. Mar.
   31, 2009) ................................................................................................................................. 12

*Pinzon v. Jony Food Corp.,* 2018 WL 2371737 (S.D.N.Y. May 24, 2018) ................................ 16

*Plizga v. Little Poland Restaurant Inc.,* 2016 WL 9307474 (S.D.N.Y. Jul. 18, 2016) ............... 19

*Raniere v. Citigroup, Inc.,* 310 F.R.D. 211 (S.D.N.Y. 2015) ..................................................... 15

*Reyes v. Altamarea Grp. LLC,* 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ........................... 18

*Riedel v. Acqua Ancien Bath New York LLC,* 2016 WL 3144375 (S.D.N.Y. May 19, 2016) ...... 20

*Scott v. Chipotle Mexican Grill, Inc.*, No. 1:12-cv-08333 (S.D.N.Y.) ....................................... 18

*Sewell v. Bovis Lend Lease, Inc.,* 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ........................ 12

*Soler v. Fresh Direct, LLC,* 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ................................ 12

*Sykes v. Harris,* 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..................................................... 9

*Torres v. Gristede's Operating Corp.,* 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ................ 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ............................. 5, 6, 20

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012)………………………..19

**Statutes and Regulations**

29 U.S.C. § 201 ............................................................................................................................. 2

New York Minimum Wage Act, Labor Law § 650 *et seq.* ............................................................ 1

New York Wage Payment Act, Labor Law § 190 *et seq.* .............................................................. 1

Department of Labor Regulations, 12 N.Y.C.R.R. Part 142………………………………..passim

iv

**Other Authorities**

Fair Labor Standard Act (FLSA) ............................................................................ passim

Fed. R. Civ. P. 23(a)-(b) ......................................................................................... 17

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 20

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................... 12

Fed. R. Civ. P. 23, Subdiv. (e)(2) ........................................................................... 13

Fed. R. Civ. P. 30(b)(6)............................................................................................. 3

## I.      INTRODUCTION

Class Representative Erica Heckle ("Plaintiff") and Defendant, Matrix Absence Management, Inc. ("Defendant" or "Matrix") (collectively, the "Parties"), jointly move this Court for preliminary approval of their class action settlement in this matter. The Parties' Settlement Agreement ("Agreement") is attached hereto as **Exhibit 1.**

Under the terms of the Agreement, Matrix will pay $4,250,000.00 ("Gross Settlement Fund") to resolve all claims brought by Plaintiff and members of the Rule 23 class certified by the Court on December 14, 2022 (Dkt. 72) ("Class Members"), a total of 200 individuals. Plaintiff individually asserts overtime pay claims under the Fair Labor Standard Act (FLSA).  Plaintiff also brings a Rule 23 class action on behalf of herself and the Class Members asserting overtime pay and derivative wage statement claims pursuant to the New York Minimum Wage Act, Labor Law § 650 *et seq.*, the New York Wage Payment Act, Labor Law § 190 *et seq.*, and the supporting Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 (collectively, "NYLL").

Because the proposed Agreement is fair, reasonable, and adequate, provides all Class Members with substantial monetary relief, and satisfies all other criteria under controlling case law of the United States Court of Appeals for the Second Circuit for preliminary approval, the Court should grant this Motion and preliminarily approve the Agreement. The Parties jointly request that this Court enter the Order attached hereto as **Exhibit 2** and: (1) preliminarily approve the Agreement attached hereto as **Exhibit 1**; (2) approve the Notice of Overtime Pay Class Action Settlement ("Notice") attached hereto as **Exhibit 3;** (3) appoint Rust Consulting, Inc. as the Settlement Administrator; (4) enjoin Class Members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Agreement unless and until such Class Members have filed valid Opt Out Statements with the Settlement Administrator; and (5) set

a Final Approval and Fairness Hearing ("Fairness Hearing") no earlier than ninety-five (95) days from the date of the Preliminary Approval Order.

## II.      BACKGROUND AND PROCEDURAL HISTORY

On February 18, 2021, Plaintiff filed this lawsuit in the U.S. District Court for the Southern District of New York arising out of her employment as a Telephonic Claims Examiner (TCE) with Defendant in its Hawthorne, New York office. *See* Dkt. 1. Plaintiff asserted claims for unpaid overtime under the FLSA as well as claims for unpaid overtime and a derivative claim for failure to provide accurate wage statements under the NYLL. *Id.* Plaintiff asserted her NYLL claims on behalf of herself and a prospective Fed. R. Civ. P. 23 Class. Specifically, Plaintiff alleged that Defendant misclassified her and all TCEs in its New York office as administratively exempt and, accordingly, unlawfully failed to pay any overtime pay for hours of work in excess of 40 hours a week. Derivative of this claim, Plaintiff further asserted that Defendant failed to provide Class Members accurate wage statements in violation of the NYLL. Defendant denied these allegations. Dkt. 14.

The case was immediately referred to mediation pursuant to the Court's Mediation Referral Order for Cases That Include Claims Under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Dkt. 17. The Court-ordered mediation was held on June 18, 2021, but was unsuccessful. Dkt. 27.

Subsequent to the first mediation, the parties began discovery, including exchanging over 750 pages of documents. In addition, Plaintiff took depositions of multiple Matrix corporate representatives on 19 separate topics pursuant to Fed. R. Civ. P. 30(b)(6), and Defendant took Plaintiff Heckle's deposition.

On March 21, 2022, Plaintiff filed a Motion for Class Certification. The motion was fully submitted on June 22, 2022. On December 14, 2022, the Court granted Plaintiff's Motion for Class

Action Certification (Dkt. 41) and issued an Order certifying a Rule 23 Class under the NYLL comprised of TCEs employed by Defendant and assigned to the Hawthorne, NY office (either in person or remotely) for the time period from February 18, 2015, to the present.[1] Dkt. 72. On January 24, 2022, after meeting and conferring, the Parties jointly requested a stay of all pending deadlines to permit the Parties sufficient time to engage in mediation. Dkt. 73. The Parties also requested that, depending on the Court's preference, the issuance of a Rule 23 Notice be deferred until after the conclusion of mediation. *Id.* The Court granted the Parties' request that same day, staying the case, and deferring the issuance of notice until after mediation. Dkt. 74.

The Parties participated in a second, in-person mediation on April 27, 2023. With the help of a mediator experienced in class action wage and hour cases, the Parties reached an agreement to resolve all claims in the litigation, including those on behalf of Plaintiff and the Class, through settlement, and reduced the principal terms of the settlement to writing in a term sheet signed that day by counsel for the Parties. Exhibit 4 ("Elkin Decl."), ¶ 4. Thereafter, the Parties continued to work to narrow the issues, identify areas of agreement, and make additional concessions where appropriate, leading ultimately to the Agreement, which they signed on June 16, 2023. *See* Ex. 1. Accordingly, consistent with the requirements of Rule 23(e) and the standards followed by the Second Circuit, the Parties seek preliminary approval of the Settlement.

### III.    SUMMARY OF PROPOSED SETTLEMENT AGREEMENT

The proposed Agreement includes a Gross Settlement Fund of $4,250,000.00. Of this amount, $2,784,816.16 shall be distributed to Class Members as backpay and liquidated damages, with 50% of the amount allocated as wages, and 50% allocated as liquidated damages. Ex. 1, ¶¶

---

[1] TCEs include all current and former Matrix employees since February 18, 2015, in positions titled Claims Examiner-STD, Claims Examiner-LOA, and Claims Examiner-AMS at the Level 1, Level 2 and/or Senior Level who are/were classified by Matrix as exempt from overtime pay.

11.7, 11.8. Defendant shall be responsible for paying payroll taxes, which shall be paid in addition to the Gross Settlement Fund. *Id.* ¶ 10.5. Class Counsel will seek $1,416,666.67 in attorneys' fees which equals thirty-three and one third percent (33 1/3%) of the Fund, and $23,917.73 in expenses to be paid from the Fund. *Id.* ¶¶ 11.2, 11.4. An amount not to exceed $9,600.00 shall be allocated from the Fund as Settlement Administration Costs. *Id.* ¶ 11.3. Additionally, Plaintiff will request approval of a service payment of $15,000.00 for Class Representative Erica Heckle. *Id.* ¶ 11.5.

Before final approval of the Settlement, the 200 Class Members will be sent a Notice outlining the terms of the Settlement. Ex. 3. As described more fully below in Section VI, the Notice contains information regarding their rights under the Settlement and instructions on how to object to or exclude themselves from the Settlement Agreement. *Id.* The Notice also sets forth the full language of the release contained in the Settlement Agreement, the amount of their individual settlement award, how it will be allocated and taxed, and how it was computed. *Id.* Plaintiff Heckle is not permitted to opt out of the Settlement. Ex. 1, ¶ 7.5.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE RULE 23 CLASS ACTION SETTLEMENT

As described herein, Matrix has agreed to pay a substantial sum to Plaintiff and the Class Members. Class Counsel believe that the Settlement provides significant relief to Plaintiff and Class Members, and that it reflects a fair, reasonable, and adequate result of this action. As such, Agreement should be preliminarily approved.

### A.  Legal Standard for Class Action Settlement Approval

The United States Court of Appeals for the Second Circuit has recognized that judicial and public policy strongly favor the settlement of class action litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context…The compromise of complex

4

litigation is encouraged by the courts and favored by public policy.") (quoting Newberg § 11:41, at 87); *Bourlas v. Davis Assocs.,* 237 F.R.D 345, 354 (E.D.N.Y. 2006) (collecting cases).

Court approval is required to settle a Rule 23 class action. Fed. R. Civ. P. 23(e); *In re Petrobras Securities Litig.,* 317 F. Supp. 3d 858, 865 (S.D.N.Y. 2018). Approval occurs in two stages. Specifically, the Court will grant preliminary approval of a class settlement after making a preliminary evaluation of fairness, then a plaintiff is permitted to disseminate notice so that, at the second stage, "class members and settling parties are provided an opportunity to be heard on the question of final court approval." *Hernandez v. Between the Bread 55th Inc.,* 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016)).

The Second Circuit analyzes a number of factors in determining whether to preliminarily approve a class action settlement. Specifically, a court must consider whether the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *In re Payment Card Interchange Fee and Merchant Discount Antitust Litig.,* 330 F.R.D. 11, 28 (E.D.N.Y. 2019)). The court is to consider the four factors enumerated in Rule 23 (e)—(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members—as well as the nine factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell* Factors"), although many of the factors overlap. *Id.*; *Wal-Mart Stores Inc.,* 396 F.3d at 117 (setting forth the *Grinnell* Factors); Fed. R. Civ. P. 23(e)(2); *see also* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) (noting that 2018 amendments to Rule 23 are intended to supplement rather than displace

the *Grinnell* Factors). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the risks of litigation. *Grinnell Corp.,* 495 F.2d at 463. All of the *Grinnell* Factors, and the Rule 23(e) criteria weigh in favor of approval of the Settlement Agreement.

### B.  The Settlement Satisfies the Requirements of Rule 23(e)(2) and the *Grinnell* Factors

#### 1.  *Adequacy of Representation*

Rule 23(e)(2)(A) requires a court to determine that "the class representatives and class counsel have adequately represented the class." As the Second Circuit has explained, adequacy "typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 99 (2d Cir. 2007). *See also In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 692 (quoting *Cordes*).

Here, Plaintiff's interests are aligned with, and not antagonistic to, the Settlement Class. Plaintiff was employed as a TCE in Defendant's Hawthorne, NY office during the relevant six-year limitations period so is a member of the Settlement Class, and she suffered the same alleged injuries and seeks the same remedies as the Settlement Class Members. Indeed, the Court already determined that Plaintiff is an adequate representative for the Class and has demonstrated her commitment to litigating the case. Dkt. 72 at 9-10.

Additionally, as recognized by the Court in its Order granting class certification, Class Counsel are "experienced and qualified class action lawyers who specialize in wage and hour actions, including those alleging misclassification. The resumes of the firms representing plaintiff (Dkt. Nos. 43, 44, 45) show each firm has been appointed class counsel in several different cases in federal courts, and that Molly A. Elkin Esq., of McGillivary Steele Elkin LLP, 'has won multi-million dollar verdicts or recoveries' on behalf of a class." Dkt. 72 at 10.

Thus, for these same reasons, representation of the Class by Plaintiff and by Class Counsel has been exceptional, and this factor supports preliminary settlement approval.

### 2. *Existence of Arm's Length Negotiations*

A court must determine that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693. Here, settlement discussions between the Parties, both of whom are represented by experienced counsel, have been lengthy. The Parties participated in an initial Court-ordered mediation in June 2021, and when that was unsuccessful, the Parties began discovery, including the exchange of documents and taking depositions. Following the Court's Decision and Order granting Plaintiff's Motion for Class Certification, the Parties participated in a voluntary, second mediation which occurred in person on April 27, 2023. The Parties' negotiations were principled, with each side basing their offers and counteroffers on Defendant's own payroll data and on estimates by Class Representative Heckle of the number of hours of unpaid overtime worked by TCEs, on average, each week.  Elkin Decl., ¶ 6. The negotiations were also based on the Parties' respective assessments of the law and the facts, and their individual assessment of litigation risks. *Id*. Both sides attended the in-person

April 2023 mediation with full authorization to approve a settlement agreement. *Id.* ¶ 5. The Parties' full-day negotiations concluded, with the assistance of an experienced mediator, in the signing of a Term Sheet containing the principal terms of the settlement agreement. *Id.* ¶ 4. Thereafter, the Parties continued to make concessions and negotiate the terms of the Settlement Agreement, which they signed on June 16, 2023. Accordingly, the principled, arm's-length negotiations support preliminary approval.

### 3.  *Adequacy of Relief (and Grinnell Factors 1, 4, 5, and 6)*

Under Rule 23(e)(2)(C), the court must determine if "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[2] These adequacy factors overlap with *Grinnell* Factors 1, 4, 5, and 6; as such, courts analyze them together.

### a.  <u>Costs, Risks, and Delay of Trial and Appeal</u>

Rule 23(e)(2)(C)(i)'s requirement that the Court analyze "the costs, risks, and delay of trial and appeal" overlap with the following Grinnell Factors: the complexity, expense, and likely duration of the litigation; the risks of establishing liability; the risks of establishing damages; and the risks of maintaining a class through the trial. *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 693-94. These factors are often analyzed together, as under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and likelihood of success in

---

[2] The only Rule 23(e)(3) agreement at issue is the proposed Settlement Agreement attached as Exhibit 1. For all of the reasons discussed herein, the Agreement is an adequate arms' length resolution to the *bona fide* dispute between the Parties.

obtaining such results." *In re Payment Card,* 330 F.R.D. at 36 (citing the 2018 Advisory Notes to

Fed. R. Civ. P. 23, Subdiv. (e)(2)).

      First, "[c]ourts favor settlement when litigation is likely to be complex, expensive or drawn

out." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 693. Here, absent settlement, the

litigation will be drawn out and expensive. The Parties would need to complete additional

expensive discovery including, but not limited to, producing and analyzing voluminous records

that capture work time including Class Member emails to and from supervisors, computer log-on

and log-off times, and telephone logs. The Parties would also need to conduct expert witness

depositions on damages models. Further, absent settlement, the Parties will engage in vigorous

summary judgment briefing on, among other things, Defendant's exemption defense and whether

liquidated damages are warranted, engage in decertification briefing, as well as participate in trial

and subsequent appeals, which will not only be expensive but will "prevent the class members

from obtaining any recovery for several years, if at all." *Id.* (quoting *Sykes v. Harris,* 2016 WL

3030156, *12 (S.D.N.Y. May 24, 2016)).

      Second, balancing "the benefits afforded the Class, including immediacy and certainty of

recovery, against the continuing risks of litigation" support settlement approval. *In re Payment

Card,* 330 F.R.D. at 37. Although Plaintiff believes her claims and those of the Class are strong,

Defendant could succeed on its administrative exemption defense which would result in Plaintiff

and the Class receiving nothing. Instead, the Agreement provides 200 Class Members with

substantial recovery now, rather than after further litigation including summary judgment, trial,

and likely appeal without any guarantee of success. *See, e.g., In re Payment Card,* 330 F.R.D. at

37; *Ayzelman v. Statewide Credit Servs. Corp.,* 242 F.R.D. 23, 27 (E.D.N.Y. 2007) (risk of

establishing liability weighs in favor of settlement approval where "several affirmative defenses through which [defendant] may avoid liability" have been raised).

Third, as this Court has explained, "[a]lthough the risk of maintaining a class through trial is present in every class action…this factor nevertheless weighs in favor of settlement where it is likely that defendant[] would oppose class certification if the case were to be litigated." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 694. The same is true here, as Defendant vigorously opposed Plaintiff's motion for class certification, *see* Dkt. 60, and is likely to file a motion for decertification after the close of all discovery and/or at trial. If successful, the Class Members would receive nothing.

Accordingly, an analysis of the costs, risks, and delay in proceeding through trial and potential appeal supports preliminary approval of the settlement, as it provides significant recovery to Plaintiff and all Class Members now.

### b. <u>**Effectiveness of the Proposed Method of Distributing Relief**</u>

While a plan of allocation of settlement funds "must be fair and adequate, it need only have a reasonable, rational basis, particularly of recommended by experienced and competent class counsel." *In re GSE Bonds Antitrust Litig.,* 41 F. Supp. 3d at 694 (quoting *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). "A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.,* 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). Nevertheless, the plan of allocation "need not be perfect." *In re GSE Bonds Antitrust Litig.,* 41 F. Supp. 3d at 694.

Here, as set forth in the Settlement Agreement, and in conjunction with the Claims Administrator, the Net Settlement Fund (i.e., the settlement fund after costs of settlement

administration, attorneys' fees, litigation costs, and service award are deducted) will be distributed to Class Members based on a point system, whereby one point was awarded to each Class Member for each week he or she was employed by Defendant as a TCE in the Hawthorne, NY office at any time between February 18, 2015, and April 27, 2023. Ex. 1, ¶ 11.8. The total number of points were then divided into the Net Settlement Fund to determine the value of a single point. *Id.* Each Class Member will be notified of his/her allocated points and will be told that the approximate value of a point is **$71.84**. Ex. 3. Notably, each Class Member will have the opportunity to provide documentation showing that he/she was awarded too many or too few points based on the number of weeks worked in a TCE position since February 18, 2015. *Id*. The Settlement Payment to each Class Member is his/her number of points multiplied by the value of a point. Fifty percent (50%) of each settlement payment will constitute backpay for wages and fifty percent (50%) will constitute liquidated damages. Ex. 1, ¶ 11.8. The minimum settlement payment to any Class Member is $100.00, meaning each Class Member who does not opt out will receive some settlement payment. *Id.* ¶ 11.9. Only two of the 200 Class members will receive a $100.00 payment. Based on this point system, the average payment to Class Members (after excluding the two $100 payments) is **$14,140.48.** This is *after* the deduction for fees, litigation expenses, and Administration Fees.

This "point system" methodology is regularly approved by this Court as a fair method of distributing settlement funds in multi-plaintiff wage and hour cases, and is reasonable and appropriate here. *See, e.g., Caballero v. Zaloumis Contracting Service, Inc.,* 2013 WL 646656 (S.D.N.Y. Feb. 20, 2013) (preliminarily approving NYLL and FLSA settlement wherein the settlement administrator will distribute funds "pursuant to an allocation formula that takes into account the number of weeks worked during the class period, with an allocation of 50% to

allegedly unpaid wages and 50% to liquidated damages."); *Sewell v. Bovis Lend Lease, Inc.,* 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) (preliminarily approving hybrid FLSA and state law overtime settlement wherein "[d]isbursement of the award will be based on the length of employment of each class member at Bovis as determined by a point system, whereby members are assigned a point for each pay period worked"). Accordingly, this factor weighs in favor of preliminary settlement approval.

### c.   The Terms of Any Proposed Attorneys' Fees Award

In determining whether to preliminary approve a class action settlement, a court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). This Court routinely approves attorneys' fee awards in similarly sized wage-and-hour class action settlements equaling one-third of the settlement fund, which is what Plaintiff seeks here. *See, e.g., Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 477-82 (S.D.N.Y. 2013) (awarding attorneys' fees equal to one-third of the $4.9 million settlement); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 WL 1364147, *5-7 (S.D.N.Y. Apr. 2, 2013) (awarding attorneys' fees equal to one-third of $6.5 million settlement fund in misclassification case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* 2009 WL 5851465, *5 (S.D.N.Y. Mar. 31, 2009) (awarding attorneys' fees equal to one-third of $3.265 million settlement fund, noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"). *See also Soler v. Fresh Direct, LLC,* 2023 WL 2492977, *4 (S.D.N.Y. Mar. 14, 2023) ("Courts in this district have approved similar attorney's fees of approximately one-third from class settlement funds, which is well within the applicable range of reasonable percentage fund awards.")

Here, the Settlement Agreement provides that attorneys' fees in the amount of $1,416,666.67, equal to thirty-three and one-third percent (33 1/3 %)—or one-third—of the Gross Settlement Fund will be paid by Defendant. Ex. 1, ¶ 9.4. As noted above, this is consistent with attorneys' fee awards made by this Court under similar circumstances. Class Counsel will also submit a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses contemporaneously with their Motion for Final Approval of the Settlement. Ex. 1, ¶ 9.1. Accordingly, this factor weighs in favor of preliminary settlement approval.

### 4.  *Equitableness of Treatment of Class Members*

Rule 23(e)(2)(D) requires the court to consider whether "the proposal treats class members equitably relative to each other." This factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2).

As described above in Section IV.B.3(b), each Class Member who does not opt-out will receive a settlement award based on application of the same point system and the same point value. *See also* Ex. 1, ¶ 11.8. Further, all Class Members will be subject to the same release set forth in the Settlement Agreement. *Id.* ¶¶ 1.6, 14.1, 14.2. Notably, the release "does not appear to affect the apportionment of relief to other class members, demonstrating equity." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 699. Therefore, this factor weighs in favor of approval.

### 5.  *Reaction of the Class (Grinnell Factor 2)*

The reaction of the Class of 200 TCEs will be judged at the Fairness Hearing. Based on Class Representative Heckle's full endorsement of the settlement, there is no reason to believe that the reaction of the Class will be anything but positive.

6. ***Stage of the Proceedings and Amount of Discovery Completed (Grinnell Factor 3)***

Under this factor, "[t]he relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 699 (quoting *In re AOL Time Warner, Inc*., 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)). Such is the case here. As described above, the case is at an advanced stage of the proceedings. The Parties have completed a substantial amount of discovery, including the exchange of over 700 pages of documents and took numerous depositions, including Plaintiff's deposition and two Rule 30(b)(6) depositions. Additionally, and prior to the second mediation, the Parties exchanged payroll records on a class-wide basis, which enabled the Parties to meaningfully engage in settlement negotiations. Thus, discovery has advanced far enough to allow the Parties to resolve this dispute responsibly. This factor, therefore, supports preliminary approval of the settlement.

7. ***Defendant's Ability to Withstand Greater Judgment (Grinnell Factor 7)***

While Matrix, a large corporation, could withstand a greater judgment, "[s]ome courts have held, however, that in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 696. *Id.* (quoting *In re Vitamin C Antitrust Litig.,* 2012 WL 5389514, at *6 (S.D.N.Y. Oct. 23, 2012)). Thus here, although Matrix is a large nationwide corporation likely to withstand a greater judgment, this factor alone "does not undermine the reasonableness of the instant settlement."

8.  ***Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)***

A court must also analyze the range of reasonableness of the settlement fund in light of the best possible recovery, as well as its reasonableness in light of all the attendant risks of litigation. *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 696. "The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum…Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular ease and the concomitant risks and costs necessarily in taking any litigation to completion." *Raniere v. Citigroup, Inc.,* 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (internal citations omitted). "[T]he question for the Court is not whether the settlement represents the highest recovery possible ... but whether it represents a reasonable one in light of the many uncertainties the class faces." *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013) (finding $590 million settlement fair and reasonable in light of uncertainties and risks, where "best possible recovery" estimated at $6.3 billion).

Plaintiff has recovered a significant sum on behalf of herself and the entire Class. Specifically, although as set forth above, no mathematical calculation is required to demonstrate reasonableness, the settlement represents approximately 38% of what Plaintiff and the Class could recover at trial on what would likely be their best day. This percentage is calculated by comparing what Plaintiff and the Class recovered to what they potentially, on their best day, could have recovered if the jury found that the administrative exemption does not apply, and awarded each Class Member **two hours of overtime pay for every day worked since February 15, 2015**, a full award of damages for wage statement violations under NYLL § 195, and the Court awarded liquidated damages equal to the backpay. Elkin Decl., ¶ 8. Obtaining an amount equal to  38% of

what would likely be a best-day recovery is well within the range of recovery this Court has found to be reasonable and supportive of preliminary approval in wage and hour cases. *See, e.g., Gervacio v. ARJ Laundry Servs. Inc.,* 2019 WL 330631, *1 (S.D.N.Y. Jan. 25, 2019) (settlement amount of approximately 20% of the maximum recovery in hybrid FLSA/NYLL case is reasonable); *Hernandez v. Loco 111 Inc.,* 2017 WL 6205809, *2 (S.D.N.Y. Dec. 5, 2017) (settlement amount representing 37% of anticipated maximum recovery in hybrid FLSA/NYLL case is reasonable). *See also Pinzon v. Jony Food Corp.,* 2018 WL 2371737, *2 (S.D.N.Y. May 24, 2018) ("Settling for even thirty percent of the total potential recovery is significant enough in this case to weigh in favor of approval—particularly in light of … the value to Plaintiff of receiving such a large lump sum without the risk and delay inherent in litigation."). Of course, if Matrix were successful on its exemption defense, Plaintiff and Class Members would recover nothing.

In addition, assuming Defendant cannot establish entitlement to its affirmative administrative exemption defense, Plaintiff and the Class face substantial risk in obtaining the maximum recovery described above. For example, a jury could find that Plaintiff and TCEs worked fewer than two hours of overtime every day for the last six years, or that no damages are owed for the derivative wage statement violations under NYLL § 195. Further, if the Court found that Defendant "proved a good faith basis to believe that its underpayment of wages was in compliance with the law" the Court could choose not to award liquidated damages. NYLL § 198(1-a). Under these scenarios, a potential outcome, which would still be a victory for Plaintiff and the Class, would be damages based on 30 minutes of overtime pay per day, without any additional liquidated damages or wage statement damages. On a class-wide basis, this scenario yields a recovery of $1,534,629.00; the instant settlement exceeds this amount by more than 2.7 times. Elkin Decl., ¶ 9. Moreover, Defendant could be successful in decertifying the Class, resulting in

16

no recovery for any Class Member other than Plaintiff Heckle. For these reasons, the Gross Settlement Fund is reasonable in light of the best possible recovery and is also reasonable based on the risks of litigation, so this factor weighs in favor of preliminary approval.

### C.  A Class Has Already Been Certified Under Rule 23(a) and (b)(3)

In a proposed Rule 23 class action settlement, "[i]n order to preliminarily approve the settlement proposal[], the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 699-700. "A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b)." *Id.*

Here, the Court will certainly be able to certify a settlement class and will find that the settlement class meets the requirements under Rule 23(a)—numerosity, commonality, typicality, and adequacy—and Rule 23(b)—predominance and superiority. Fed. R. Civ. P. 23(a)-(b). This is because the Court *has already found* that the Class satisfies these standards when it previously certified this action as a class action. Dkt. 72. Thus, for the reasons set forth in the Court's Order Granting Class Certification, certification of a settlement class is warranted. As such, this factor supports preliminary settlement approval as well.

### D.  The Service Award to Class Representative Heckle Should be Approved

As this Court explained in approving service awards to plaintiffs involved in filing and litigating a similar claim, "in a wages and hours case, where a low-level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.*, 2014 WL 2199427 at *11 (S.D.N.Y. May 23, 2014). Service awards "fulfill the important purpose of compensating

plaintiffs for the time they spend and the risks they take." *Flores v. Anjost Corp.*, 2014 WL 321831, at *27 (S.D.N.Y. 2014). As such, service awards are common in the Second Circuit. *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, No. 1:12-cv-08333 (S.D.N.Y.), Dkts. 1202, 1204 (Dec. 8, 2021) (approving $15,000.00 service awards to each of 7 named plaintiffs in hybrid FLSA/NYLL overtime pay case); *Reyes v. Altamarea Grp. LLC,* 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service award of $15,000.00 to class representatives in hybrid FLSA/NYLL wage and hour settlement); *Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (approving service award of $15,000.00 to each of 15 class representatives in hybrid FLSA/NYLL wage and hour settlement).

Here, Plaintiff seeks a $15,000.00 service award for Class Representative Heckle who diligently and vigorously served the Class from the inception of this litigation through its resolution by, *inter alia*, providing Class Counsel with declarations, documents, and information related to and supporting the Class claims, reviewing the complaint, explaining TCE's job duties, and explaining Defendant's pay practices and compensation policies. Elkin Decl. ¶ 10. Additionally, Class Representative Heckle had to use multiple days of leave from her current job to assist in prosecuting this case on behalf of the Class. *Id.* She spent many hours in interviews with Class Counsel, preparing for and sitting for a deposition, and preparing for and participating in two mediations—a remote one in 2021, and the full day in-person mediation on April 27, 2023. *Id.* Ms. Heckle's service has been invaluable. Without Ms. Heckle, there would have been no class action, and no class action settlement. For these reasons, and because the Service Award she seeks is reasonable and in line with service awards in other wage and hour settlements approved by this Court, and because Ms. Heckle took considerable personal risk by assuming responsibility for prosecuting this action against her employer, the Service Award should be preliminarily approved.

## V.   PLAINTIFF'S FLSA SETTLEMENT SHOULD BE APPROVED

Plaintiff Heckle also asserts claims under the FLSA, which are largely duplicative of her NYLL claims and which will be resolved by the settlement. "A settlement that results in the dismissal of an FLSA claim with prejudice requires approval of the district court or the Department of Labor even where, as here, the claim was brought by a single plaintiff who never sought to represent a class." *Plizga v. Little Poland Restaurant Inc.,* 2016 WL 9307474, *2 (S.D.N.Y. Jul. 18, 2016) (citing *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016)). "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

Courts evaluating whether FLSA settlements are reasonable consider the following factors: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)*. See also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020) ("District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*…."). In hybrid FLSA/NYLL cases such as this one, analysis of the *Wolinsky* factors is subsumed by analysis of the *Grinnell* factors. *See, e.g., Riedel v. Acqua Ancien Bath New York LLC,* 2016 WL 3144375, *7 (S.D.N.Y. May 19, 2016) (considering *Wolinsky* and *Grinnell* Factors together).

19

Accordingly, for all of the reasons set forth above in Section IV, the settlement of Plaintiff's FLSA claims is fair and reasonable under the Second Circuit's standards and should be approved.

## VI.   PROPOSED SETTLEMENT NOTICE

Where a class action settlement warrants preliminary approval, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Specifically, the court must direct "the best notice that is practicable under the circumstance[s]," to all Class Members "who can be identified through reasonable effort" and through "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(3)(B). The "adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness," and "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc,* 396 F.3d at 113 (internal quotations omitted).

The Parties' proposed Notice of Overtime Pay Class Action Settlement ("Notice"), attached hereto as Exhibit 3, is reasonable and should be approved because it adequately puts Class Members on notice of the settlement and provides a full and fair opportunity to review the settlement terms and to develop a response. Specifically, the proposed Notice sets forth the nature of the action, the definition of the class, the claims and defenses at issue, the rights of Class Members to opt out, or object, and the time and manner of doing so, and the effect of participating by not opting out. Ex. 3. *See* Fed. R. Civ. P. 23(c)(2)(B). Indeed, the Notice specifically provides the amount that the Class Member will receive under the settlement, the methodology for computing that amount, and an opportunity to provide documentation that would show that the

Class Member should have been credited with more or fewer points. As set forth in the Parties'
Settlement Agreement, the Notice will be distributed to all 200 Class Members identified by
Defendant via U.S. Mail, through an experienced claims administrator who will run the mailing
addresses from the Class List provided by Defendant through the National Change of Address
database of the U.S. Post Office. Ex. 1, ¶ 6.1. The settlement administrator will also conduct an
address trace on all Class Members whose Notice is returned undeliverable and will resend the
Notice to all updated addresses obtained through the trace. *Id.* ¶ 6.2.

Accordingly, the proposed Notice satisfies all the requirements of Rule 23 and due process
and should be approved. *See, e.g., Chang v. Philips Byrant Park LLC,* 2020 WL 104812, *4
(S.D.N.Y. Jan. 9, 2020) (approving class settlement notice where the notice "will provide the best
notice practicable under the circumstances and appear[s] to allow the Class Members a full and
fair opportunity to consider the Parties' proposed settlement and develop a response," and where
the notice distribution plan "appears to be a reasonable method calculated to reach all Class
Members who would be bound by the settlement").

## VII.    CONCLUSION

For the reasons set forth above, the Parties respectfully request that this Court enter the
Order attached hereto as **Exhibit 2** and: (1) preliminarily approve the Agreement attached hereto
as **Exhibit 1**; (2) approve the Notice of Overtime Pay Class Action Settlement attached hereto as
**Exhibit 3;** (3) appoint Rust Consulting, Inc. as the Settlement Administrator; (4) enjoin Class
Members from filing or prosecuting any claims, suits or administrative proceedings regarding
claims released by the Agreement unless and until such Class Members have filed  timely and
valid Opt Out Statements with the Settlement Administrator; and (5) set a Final Approval and

Fairness Hearing ("Fairness Hearing") no earlier than ninety-five (95) days from the date of the

Preliminary Approval Order.

Dated: June 16, 2023                                    Respectfully submitted,

                                                       /s/ Molly A. Elkin
                                                       Molly A. Elkin
                                                       Sarah M. Block
                                                       MCGILLIVARY STEELE ELKIN LLP
                                                       1101 Vermont Ave., N.W., Suite 1000
                                                       Washington, DC 20005
                                                       Tel.: (202) 833-8855
                                                       Fax: (202) 452-1090
                                                       mae@mselaborlaw.com
                                                       smb@mselaborlaw.com

                                                       Travis M. Hedgpeth
                                                       Texas Bar No. 24074386
                                                       THE HEDGPETH LAW FIRM, PC
                                                       3050 Post Oak Blvd., Suite 510
                                                       Houston, Texas 77056
                                                       Tele.: (281) 572-0727
                                                       travis@hedgpethlaw.com

                                                       Jack Siegel
                                                       Texas Bar No. 24070621
                                                       SIEGEL LAW GROUP PLLC
                                                       5706 E Mockingbird Lane, Suite 115
                                                       Dallas, Texas 75206
                                                       Tel.: (214) 790-4454
                                                       jack@siegellawgroup.biz

                                                       *Counsel for Plaintiff and the Class*

                                                       /s/ Evan B. Citron
                                                       Evan B. Citron
                                                       Jamie Haar
                                                       Ogletree, Deakins, Nash, Smoak
                                                           & Stewart, P.C.
                                                       599 Lexington Ave., 17th Floor
                                                       New York, NY 10022
                                                       Phone: (212) 492-2068
                                                       Fax: (212) 492-2501
                                                       evan.citron@ogletreedeakins.com
                                                       jamie.haar@ogletreedeakins.com

22

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

This is to certify that, on June 16, 2023, the foregoing document and exhibits were filed with the Court through the Court's CM/ECF filing system, which will serve copies all Counsel of Record who have entered appearances in this matter.

*/s/ Molly A. Elkin*
Molly A. Elkin

23