# Exhibit 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**Erica Heckle,**

       **Plaintiff,**

v.

**Matrix Absence Management, Inc.,**

       **Defendant.**

**Case No.  7:21-cv-1463 VB**

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement" or "Settlement") is made and entered into by and among Class Representative Erica Heckle ("Heckle" or "Plaintiff") on behalf of herself and the Class Members (defined below) she represents under Rule 23 of the Federal Rules of Civil Procedure, and Defendant Matrix Absence Management, Inc.  ("Defendant" or "Matrix") (collectively, "the Parties").

## RECITALS

On February 18, 2021, Heckle filed her Complaint (Dkt. 1) (the "Complaint") alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), by failing to pay her overtime compensation for all hours worked due to alleged misclassification as an exempt employee.  The Complaint also alleges a Rule 23 class action claim under the New York Minimum Wage Act, Labor Law § 650 *et seq*., the New York Wage Payment Act, Labor Law § 190 *et seq*., and the supporting Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 (collectively, "NYLL") by failing to pay overtime compensation and failing to provide accurate wage statements (the "Rule 23 Class Action") (collectively, the "Litigation").  Defendant denies these allegations.

On March 21, 2022, Heckle filed a Motion for Class Certification of her NYLL claims. (Dkt. 41). Defendant opposed the motion. (Dkt. 60). The Court granted Plaintiff's motion on December 14, 2022, and issued an Opinion and Order ("Opinion and Order") certifying a Rule 23 Class under the NYLL. (Dkt. 72).

On January 24, 2023, the Court granted the Parties' motion to stay proceedings to permit the Parties to engage in mediation. (Dkt. 74). In connection with this mediation, counsel for the Parties exchanged information and data and engaged in good faith in-person negotiations presided over by a highly regarded mediator with extensive experience in wage and hour law. On April 27, 2023, mediation ended with an agreement in principle with the core terms reduced to a term sheet signed by the undersigned Counsel. Since the April 27, 2023, mediation, the Parties have continued to work to narrow the issues, identify areas of agreement, and have made additional concessions where appropriate, leading ultimately to this Agreement.

The Parties and their Counsel believe that the interests of all concerned are best served by compromise, settlement, and dismissal of the Litigation with prejudice and have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests and avoid the expense, delay, diversion, and risk of protracted and complex litigation.

1.    **DEFINITIONS**

1.1.    The term "Class Member" means all individuals belonging to the Class certified by the Court in its Opinion and Order dated December 14, 2022. (Dkt. 72). Specifically, the Class includes all current and former Telephone Claims Examiners ("TCE") since February 18, 2015, employed by Defendant at its Hawthorne, New York Office (either in person or remotely) in positions titled Claims Examiner-STD, Claims Examiner-LOA, and Claims Examiner-AMS at the Level 1, Level 2, and/or Senior Level who are or were classified by Matrix as exempt from

the overtime provisions of the NYLL ("Covered Positions"). These persons were identified by Defendant in the Class List that it produced on February 7, 2023, and later supplemented on May 19, 2023, who worked for one or more workweeks as TCEs (as defined above) since February 18, 2015, through April 27, 2023. Including Heckle, there are 200 Class Members.

1.2.    The term "Parties" means Erica Heckle and Defendant

1.3.    The term "Class Counsel" means the undersigned Plaintiff's lawyers.

1.4.    The "Gross Settlement Fund" is Four Million Two Hundred and Fifty Thousand Dollars and Zero Cents ($4,250,000.00), which is the total amount Defendant shall be required to pay under the terms of this Settlement Agreement, except that Defendant will also pay its share of employer payroll taxes associated with payments to Class Members pursuant to this Agreement that are attributable to back wages.

1.5.    The "Released Parties" means Defendant, including its former and present officers, directors, agents, employees, attorneys, insurers, benefit plans, predecessors, successors, parents, subsidiaries, and affiliated entities.

1.6.    "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Class Member who does not opt out has or might have, of any kind whatsoever, that relate to payment of wages by Defendant for hours worked through June 27, 2023, except to the extent that any such claim may not be waived as a matter of law.  The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims against Defendant for unpaid wages, minimum wages, overtime, late payment of wages, damages or relief of any kind including but

not limited to the FLSA, NYLL, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation (including liquidated damages, penalties, interest, costs, attorneys' fees, and expenses of the settlement administrator); and (iii) any and all claims pursuant to or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 100 *et seq*., to the extent such ERISA claims are premised on an alleged failure to credit any Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including June 27, 2023.  The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment and not related to the payment of minimum and overtime wages including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state and local law, statutes and regulations. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

**2.      NO ADMISSION OF LIABILITY; COMPROMISE ACKNOWLEDGEMENT**

2.1.    The Parties agree that this Agreement is entered into solely on the basis of a compromise of disputed claims, and this Agreement is not, and is not to be construed as, an admission by either Party of any liability whatsoever. Nor is it, and nor will it be construed as, an admission of any act or fact whatsoever, including any violation of federal, state, local, or

common law, statute, ordinance, directive, regulation, or order. This Agreement, and any communications, papers, proceedings, or orders related to this Agreement, are settlement documents and shall be inadmissible in evidence in any proceeding, other than an action or proceeding to approve, interpret, or enforce this Agreement.

2.2.    The Parties have investigated the facts and law during this Litigation, including exchanging written discovery; taking the depositions of Plaintiff and Defendant's representatives on multiple topics pursuant to FRCP Rule 30(b)(6) regarding job duties and unpaid overtime hours worked; reviewing documents related to Defendant's policies and practices; analyzing emails and other documents related to the Class Members' job duties and decision-making authority; and analyzing Defendant's payroll records.   The Parties have also analyzed the applicable law and the damages claimed by Plaintiff and the Class Members. Relying on their fact investigations, analyses, and the law, the Parties have engaged in arm's-length settlement negotiations.

2.3.    Plaintiff believes the claims asserted in the Litigation have merit. However, Plaintiff recognizes the expense and length of continued litigation through prolonged class-wide discovery, vigorous motions practice concerning, *inter alia*, summary judgment regarding Defendant's claimed exemption defense and other liability issues, the difficulties in proving damages on a class-wide basis, the trial, and possible appeals.   Plaintiff has also taken into account the uncertain outcome and the risk of any litigation, as well as the delays inherent in such litigation and the likelihood of protracted appellate review.   Plaintiff believes that the settlement reached confers substantial benefits and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interests of the Class Members.

2.4.    Defendant maintains that it has complied with its obligations under the FLSA and the NYLL, or other similar state and local law, statutes and regulations and believes Plaintiff's claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs will fail.  Defendant has vigorously contested the claims, but Defendant has taken into account the uncertainty and risks inherent in any litigation and believes that further litigation would likely be protracted, expensive, and contrary to its best interests.  Substantial amounts of time, energy, and other resources have been committed, and, absent settlement, will continue to be committed, to Defendant's defenses against the claims asserted in this Litigation.  In light of these factors, Defendant believes that settlement is the best way to resolve the disputes among the Parties while minimizing its own further expenditures.

2.5.    The settlement will not be considered a concession or admission by Defendant of any violation of federal, state, or local law, statute, regulation, rule or order or any obligation or duty at law or in equity.

2.6.    Nothing in this Agreement will be deemed a concession or admission by any party as to the amount of time the Class Members worked, including any amount of time in excess of 40 hours in a workweek.

2.7.    Class Counsel, after consultation with the Plaintiff, have independently determined that settlement and dismissal of the claims asserted in this Litigation are proper under the circumstances of this action and the terms of this Agreement.

2.8.    This Agreement contains all of the agreements between the Parties and their respective counsel relating to this settlement of the Litigation.  There are no undisclosed side agreements between the Parties or their counsel.  At all times, the negotiations leading to the Agreement were adversarial, non-collusive, and at arm's-length.

## 3.      TIMELINE FOR SETTLEMENT

    3.1.    The Parties contemplate the following timeline of settlement events:

        a.      Within fourteen (14) calendar days of the execution of this Agreement by all Parties, the Parties will jointly submit a Motion for Preliminary Approval of Class Action Settlement as set forth in Paragraph 5.3 of this Agreement.  The date on which the Court issues an order granting such motion is referred to herein as the "Preliminary Approval Date."

        b.      Within five (5) business days of the date that the Parties execute this Agreement, Defendant will provide the Class List to the Settlement Administrator, as set forth in Paragraph 4.2 of this Agreement, and Class Counsel will provide the Settlement Administrator with each Class Member's tentative settlement allocation in accordance with Paragraphs 11.8 and 11.9.

        c.      Within fourteen (14) calendar days of the Preliminary Approval Date, the Settlement Administrator will distribute the Notice, as set forth in Paragraph 6.1 of this Agreement.  The date on which the Settlement Administrator distributes the Notice is referred to herein as the "Notice Distribution Date."

        d.      Class Members, exclusive of Plaintiff, shall have forty-five (45) calendar days from the Notice Distribution Date to submit an Opt Out Statement, object to the Settlement, or dispute their point allocation, as set forth in Paragraphs 7.1, 8.1 and 11.9 of this Agreement. This deadline is referred to herein as the "Response Deadline."

        e.      No later than seven (7) calendar days before the final approval hearing, or by such other date set by the Court, Class Counsel shall file a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, as set forth in Paragraphs 9.1 and 9.4 of this Agreement.

f.      No later than seven (7) calendar days before the final approval hearing, or by such other date set by the Court, Class Counsel shall file a Motion for Final Approval of Settlement, as set forth in Paragraph 9.2 of this Agreement.  The Court's order granting such motion is referred to herein as the "Final Approval Order," and the date such order is issued by the Court is referred to herein as the "Final Approval Date."

g.      Within five (5) calendar days of the Final Approval Date, the Settlement Administrator shall provide the Settlement Administrator Report as defined and set forth in Paragraph 10.3 of this Agreement.

h.      The "Effective Date" shall be the date on which the Final Approval Order is no longer appealable, or, if an appeal is filed, the date on which such appeal is final.

i.      Within fourteen (14) calendar days of the Effective Date, Defendant will deposit the Gross Settlement Fund, plus the employer's share of applicable payroll taxes, into the Qualified Settlement Fund ("QSF"), as set forth in Paragraph 10.5 of this Agreement.

j.      Within five (5) calendar days after Defendant funds the QSF, the Settlement Administrator shall mail the Settlement Payments and Service Award (as applicable) to Class Members as set forth in Paragraph 12.1 of this Agreement and shall provide Class Counsel their Attorneys' Fees and Actual Expenses as set forth in the Final Approval Order.

k.      The deadline for Class Members to cash Settlement Payments and the Service Award will be one hundred twenty (120) days from the date such Settlement Payments and the Service Award are issued by the Settlement Administrator.  This one hundred twenty (120) day period shall be called the "Cashing Period." During the Cashing Period, the Settlement Administrator shall reissue Settlement Payments and the Service Award at the request of any

Class Member and provide the Parties, upon request, a list of all Class Members who have not cashed their Settlement Payments and the Service Award.

l.      Within sixty (60) calendar days after the end of the Cashing Period, the Settlement Administrator shall remit funds remaining from any uncashed Settlement Payments and Settlement Awards to the unclaimed property fund in the state in which the Class Member worked and notify such Class Member by email and First Class U.S. mail.

## 4.    APPOINTMENT OF SETTLEMENT ADMINISTRATOR

4.1.    The Parties agree that, subject to the approval of the Court, the Parties will retain the firm of Rust Consulting Services to act as the independent Settlement Administrator, provide the Rule 23 Notice to Class Members, open and manage a Qualified Settlement Fund under Section 468B of the IRC and Treas. Reg. § 1.468B-1 *et seq.*, distribute Settlement Payments and the Service Award, and perform other tasks consistent with the orders of the Court or this Agreement. Defendant will be consulted by Class Counsel and/or the Settlement Administrator with respect to any issues that arise with regard to settlement administration, and the Parties agree to work together in good faith to resolve such issues.  The Settlement Administrator will be paid for all Settlement Administration Costs out of the Gross Settlement Fund described in Paragraphs 10.4.4 and 11.3. The "Settlement Administration Costs" will not exceed $9,600.00 and shall be inclusive of the Settlement Administrator's fee and costs necessary to administer the Agreement.

4.2.    No later than the date set forth in Paragraph 3.1(b) above, Defendant will provide the Settlement Administrator with the: (i) name; (ii) best known mailing address; (iii) known telephone number(s); (iv) known email address(es); and (v) Social Security Number of each Class Member (the "Class List").

4.3.    The actions of the Settlement Administrator shall be governed by the terms of the Agreement.   Class Counsel and Defendant's counsel may provide relevant information and guidance as needed by the Settlement Administrator in the performance of its duties and may engage in related communications with the Settlement Administrator with notice and copies to one another, but without notice or copies to the Class Members or the Court, unless requested by the Court.

## 5.    PRELIMINARY COURT APPROVAL OF SETTLEMENT

5.1.    If this Agreement and the settlement it memorializes are not finally approved by the Court, or if any appeal results in a reversal of the Final Approval Order that affects: (i) the amount to be paid by Defendant under this Agreement; (ii) the releases given by the Class Members who do not Opt Out or (iii) any other material aspect of the Settlement, then this Agreement shall become null and void.

5.2.    This Agreement will become final and effective only upon the occurrence of all of the following events: (a) the Agreement is executed by the Plaintiff, Defendant, Class Counsel and Counsel for Defendant; (b) the Court approves the material terms of the settlement as set forth in the Agreement and enters, without material change, the Preliminary Approval Order as set forth in Paragraph 5.3; (c) the Notice is sent to the Class Members; (d) Class Members are afforded the opportunity to exclude themselves from the Settlement by submission of an Opt Out Statement; (e) Class Members are afforded the right to file written objections; (f) the Court holds the Final Approval Hearing and enters a Final Approval Order dismissing this case with prejudice and sufficient time passes such that the Final Order is no longer appealable, or, if an appeal is filed, the Final Order is approved upon appeal.

5.3.     No later than the date set forth in Paragraph 3.1(a) above, the Parties will jointly submit this Agreement to the Court with an appropriate Motion for Preliminary Approval of Class Action Settlement. In such motion, the Parties will request that the Court enter an order: (1) preliminarily approving the settlement reached by the Parties in this action as embodied in this Agreement; (2) approving the proposed settlement Notice attached hereto as **Exhibit A**; (3) appointing Rust Consulting, Inc. as the Settlement Administrator; (4) enjoining Class Members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such Class Members have filed timely and valid Opt Out Statements with the Settlement Administrator; and (5) setting a Final Approval and Fairness Hearing ("Fairness Hearing") no earlier than ninety (90) days after Defendant provides notice to the appropriate governmental authorities in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, on the question of whether the Settlement, including without limitation, payment of Attorneys' Fees, Actual Expenses, and the Service Awards, should be finally approved as fair and reasonable.

5.4.     Defendant shall provide notice to the appropriate governmental authorities as set forth in Paragraph 5.3(5) no later than five (5) business days after the date of the Preliminary Approval Order.  Defendant also agrees to provide documents and information to the appropriate governmental authorities pursuant to 28 U.S.C. § 1715.

5.5.     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, this Settlement Agreement will be null and void and the Litigation will resume as if no settlement had been attempted.

6.      **DISTRIBUTION OF APPROVED CLASS SETTLEMENT NOTICES**

6.1.    No later than the date set forth in Paragraph 3.1(c) above, the Settlement Administrator will mail a Notice of Settlement of Class Action Lawsuit to Class Members. ("Notice").   Before mailing the Notice, the Settlement Administrator will run the mailing addresses from the Class List through the National Change of Address ("NCOA") database of the United States Post Office.

6.2.    The Settlement Administrator will conduct an address trace on all Settlement Class Members whose Notice is returned undeliverable and will resend the Notice to all updated addresses obtained through the trace.   Unless a Notice is returned to the Settlement Administrator by the U.S. Postal Service as undeliverable, each Notice shall be deemed mailed and received by the Class Member to whom it was sent seven (7) days after mailing.

7.      **RULE 23 OPT OUT PROCEDURE**

7.1.    If a Class Member intends to opt out of the Litigation, he or she must mail a written, personally signed statement ("Opt Out Statement") to the Settlement Administrator that states: "I request to be excluded from the settlement in *Heckle v. Matrix Absence Management, Inc.,* Case No. 7:21-cv-1463 VB (U.S.D.C. Southern District of New York).  I affirm that I was employed by Defendant as an exempt employee in one of the positions identified in the Notice as being a Class Member and paid on a salary basis at some point in time from February 18, 2015, through April 27, 2023."   The Class Member must also include his or her name, address, and telephone number(s).  To be effective, the Opt Out Statement must be mailed to the Settlement Administrator via First Class U.S. Mail, postage prepaid and postmarked by the Response Deadline.

7.2.     The Settlement Administrator shall retain copies of any Opt Out Statements and provide them to Defendant and Class Counsel within three (3) business days of receipt. The Settlement Administrator shall serve a final list of all Opt Out Statements to the Parties within three (3) business days after the Response Deadline.

7.3.     Class Counsel will, within five (5) business days after the Response Deadline, file with the Court via ECF copies of all timely and valid Opt Out Statements submitted.

7.4.     Any Class Member who does not timely submit an Opt Out Statement pursuant to this Agreement will be deemed to have accepted the Settlement, and the terms of this Agreement, including the Release as set forth in Paragraph 14.1 of this Agreement, and will have forever waived his or her right to opt out of the Litigation.

7.5.     The Parties agree that Erica Heckle may not exclude herself from the Settlement.

7.6.     Any Class Member who submits a timely and valid Opt Out Statement shall not: (1) be bound by any orders or judgments entered in this Litigation; (ii) be entitled to benefits or relief under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to the Settlement or appeal from any order of the Court.

## 8.     OBJECTIONS TO SETTLEMENT

8.1.     To object to the Agreement, a Class Member must file with the U.S. District Court for the Southern District of New York a written objection to the Settlement and, if the Class Member intends to appear at the Fairness hearing, a written notice of their intention to appear, with copies to the Settlement Administrator postmarked no later than the Response Deadline.  the statement submitted ("Objection Statement") must set forth in clear and concise terms the legal and factual arguments supporting the objection.  Any reasons not included in the Objection Statement will not be considered. The Objection Statement must also include the

name, address, email, and telephone number for the individual making the objection.    The

Settlement Administrator will provide the Parties with copies of each Objection Statement by

email within one (1) business day of receipt. Class Counsel will file the originals of any and all

Objection Statements with the Court within five (5) business days after the Response Deadline.

8.2.    An individual who files objections to the Settlement in accordance with Paragraph

8.1 ("Objector") by submitting an Objection Statement has the right to appear at the Fairness

Hearing either in person or through counsel hired by the Objector.    As described above in

Paragraph 8.1, an Objector who wishes to appear at the Fairness Hearing must state his or her

intention to do so in writing at the time he or she submits his or her Objection Statement.    An

Objector may withdraw his or her objections at any time.    No Objector may present an objection

at the Fairness Hearing based on a reason not stated in his or her written Objection Statement.    A

Class Member who has submitted an Opt Out Statement may not submit objections or an

Objection Statement to the Settlement.

8.3.    The Parties may file with the Court written responses to any filed objections no

later than three (3) business days before the Fairness Hearing.

8.4.    At no time shall either Party or their Counsel seek to solicit or otherwise

encourage Class Members to submit written objections to the Settlement, request exclusion from

the Settlement, or appeal the Court's final judgment.

8.5.    Any Objector whose objection is overruled will be paid his/her allocation under

the Settlement and will be bound by the settlement terms.

8.6.     Individuals who fail to timely object in the manner specified above will be

deemed to have waived any objections and will be foreclosed from making any objection to the

Settlement, whether by appeal or otherwise.

9.      **FINAL APPROVAL AND FAIRNESS HEARING**

9.1.    No later than the date set forth in Paragraph 3.1(e), Class Counsel will file a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

9.2.    No later than the date set forth in Paragraph 3.1(f), the Parties will jointly submit to the Court a memorandum of law and any necessary declarations, objections, or opt-out information in support of a Motion for Final Approval and Stipulation of Dismissal ("Final Approval Motion"). Class Counsel will draft the Final Approval Motion and supporting memorandum and will submit it to the Defendant for review and editing no later than three (3) business days prior to the deadline for submission to the Court.

9.3.    In the Final Approval Motion, the Parties will request that the Court, among other things: (1) state that there is a bona fide legal dispute between the Parties as to whether Class Members are owed any wages, overtime compensation, or statutory damages; (2) approve the Agreement, including all information contained in the Notice, as fair, reasonable, adequate, and binding on Plaintiff and all Class Members who have not timely opted out of the settlement; (3) approve the procedure for Defendant to pay the Gross Settlement Fund into the QSF as described in Paragraph 10.5; (4) order Administration of the QSF as described in Paragraphs 10-13; (5) order the dismissal with prejudice of the claims of Plaintiff and all Class Members who have not timely opted out of the Settlement; (6) order entry of a Stipulation of Dismissal in accordance with this Agreement; 7) approve the Attorneys' Fees and Actual Expenses set forth in Paragraph 10.4, 11.2 and 11.4; and, (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement.

9.4.    Class Counsel will seek an award of Attorneys' Fees of $1,416,666.67 ("Attorneys' Fees"), which equals thirty-three and one third percent (33 1/3 %) of the Gross Settlement Fund.  These Attorneys' Fees shall be paid from the Gross Settlement Fund as defined in Paragraph 10.4.  In addition, Class Counsel will be reimbursed $23,917.73 for out-of-pocket expenses ("Actual Expenses") from the Gross Settlement Fund.  The Settlement Administration Costs will also come out of the Gross Settlement Fund in an amount not to exceed $9,600.00.  Defendant does not and will not oppose Class Counsel's request for Attorneys' Fees and Actual Expenses to the extent the amounts requested are equal to the amounts set forth in this Paragraph.

9.5.    If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Parties will resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying final approval; or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement.

9.6.    In the event this Agreement does not become final and the Notice has already been sent to Settlement Class Members, the Settlement Administrator will provide notice to the Settlement Class Members, in a form jointly agreed upon by the Parties, that the Agreement did not receive final approval and that, as a result, no Settlement Payments will be made under the Agreement.  Such notice shall be mailed by the Settlement Administrator via First Class U.S. Mail, postage prepaid, to the addresses used by the Settlement Administrator in mailing the Notice.  The costs of such mailing shall be split equally between Class Counsel and Defendant.

9.7.    In the event the Final Approval Order is consistent with the terms and conditions of this Agreement in all material respects, the Class Members, Class Counsel, and Defendant all

hereby waive any and all rights to appeal the Final Approval Order. The waiver in the preceding sentence does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

9.8. Plaintiff and Class Counsel understand and agree that any fee payments made under Paragraph 10.4 will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Plaintiff and Class Members or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of this Litigation. As an inducement to Defendant to enter into this Agreement, and as a material condition thereof, Plaintiff and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against the Released Parties for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Paragraph 9. As a further inducement to Defendant to enter into this Agreement, and as a material condition thereof, Plaintiff and Class Counsel further understand and agree that the fee and cost payments made pursuant to Paragraphs 10.4, 11.2 and 11.4 will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted or discharged under this Paragraph, and warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for attorneys' fees or costs, including but not limited to, bills of costs or requests for attorneys' fees, for any fees and/or costs arising out of the Litigation, and Plaintiff and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge Defendant of any liability for such fees and/or costs. Furthermore, Plaintiff and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorneys' fee lien on or claim to any proceeds arising out of, by virtue of, or in connection

with this Litigation, and that the terms of this Agreement shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Litigation.

**10.    QUALIFIED SETTLEMENT FUND**

10.1.    Defendant and Settlement Administrator will cause to be established and maintained a Qualified Settlement Fund ("QSF") to be designated the *Heckle* Qualified Settlement Fund.  The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code ("Code") and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1 *et seq*., and will be administered by the Settlement Administrator in accordance with the terms of this Agreement and in such a manner as to qualify and maintain the qualifications of the QSF under the aforementioned Code sections.  The monies to establish, maintain, and fund the QSF will be part of the Settlement Administrative Cost which will come exclusively from the Gross Settlement Fund provided for in Paragraph 10.4.

10.2.    The Settlement Administrator will apply for the employer identification number required for the QSF and will provide that number to Defendant within two (2) weeks after receiving it.   The Settlement Administrator will comply with all applicable tax filings, withholdings, payments, and reporting requirements of the QSF, including those required by the Code and applicable regulations thereunder.  The Settlement Administrator will timely inform Defendant of any federal or state tax payment or filing obligations associated with or arising out of payments made by the QSF, although the Settlement Administrator shall be the one to make such payments as specified in Paragraphs 13.1 and 13.2.

10.3.    No later than the date set forth in Paragraph 3.1(g), the Settlement Administrator will tender a report (the "Settlement Administrator Report") to Class Counsel and Defendant's Counsel containing the following information: (1) the gross Settlement Payment to each Class

Member, before deduction of the Class Member's share of taxes and withholding; (2) the amount of the Settlement Payment attributed to wages; (3) the amount of the Settlement Payment attributed to liquidated damages, and non-wage recovery; (4) the net Settlement Payment to the Class Member, after deduction of the Class Member's share of taxes and withholding; and (5) the amount of the Defendant's portion of the payroll taxes on the Settlement Payments to be paid by Defendant to the Settlement Administrator who shall remit such taxes to the appropriate taxing authorities on behalf of Defendant.  The Settlement Administrator will further include in the Report: (a) the sum of the gross amount of all Settlement Payments; (b) the gross amount of the Defendant's portion of payroll taxes on all Settlement Payments; and (c) the total Settlement Administration Costs.  In the event of any dispute as to the calculation of Defendant's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination.  The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings.  Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Paragraph.

10.4.    The following Gross Settlement Fund, calculated in accordance with the terms of this Agreement and paid in Settlement of the Litigation, is $4,250,000.00 and comprises the following:

10.4.1. Court-approved Settlement Payments to Class Members;

10.4.2. Attorneys' Fees and Actual Expenses of Class Counsel as awarded by the Court;

10.4.3. Service Award to Plaintiff, as awarded by the Court;

10.4.4. Settlement Administration Costs (capped at $9,600.00); and

10.4.5. Taxes that are withheld and tendered by the Settlement Administrator on behalf of the Class Members with respect to any Settlement Payments.

10.5.   No later than the date set forth in Paragraph 3.1(i), Defendant will send the Gross Settlement Fund plus the employer's share of applicable payroll taxes to the Settlement Administrator for deposit into the QSF. As transferor of the funds to be deposited in the QSF, Defendant will prepare and file the information statements concerning its payments to the QSF as required to be provided to the IRS pursuant to the regulations under Code § 468B.  Defendant will be responsible for paying its share of employer payroll taxes.  The employer payroll taxes will not come out of the Gross Settlement Fund deposited in the QSF.

10.6.   The Settlement Administrator shall have full responsibility for all distributions from the QSF.  Defendant, Defendant's Counsel, Plaintiff, and Class Counsel shall not have any obligation or liability regarding distributions from the QSF to any Class Member.  Any person who does not receive a Settlement Payment will have no recourse against Defendant, Defendant's Counsel, Plaintiff, or Class Counsel for failure to receive any payment due under this Agreement.

10.7.   The Parties shall have the right to inspect the records of the QSF, including but not limited to, imaged copies of the front and back of endorsed checks, and any correspondence between the Settlement Administrator and Class Members relating to disputes over payments.

10.8.   The QSF will terminate twelve (12) months after the Settlement Administrator initially mails the Settlement Checks to Class Members.

## 11.    DISTRIBUTION OF GROSS SETTLEMENT FUND

11.1.    The Parties agree that the Gross Settlement Fund will be distributed as set forth in this Paragraph (Paragraph 11).

11.2.    Class Counsel will be reimbursed for the Actual Expenses of Litigation in an amount not to exceed $23,917.47.

11.3.    The Settlement Administrator will be paid Settlement Administration Costs in an amount not to exceed $9,600.00.

11.4.    Class Counsel will receive an award of Attorneys' Fees of $1,416,666.67 in accordance with the Court's Final Approval Order.

11.5.    Subject to Court approval, the Parties agree that up to $15,000.00 of the Gross Settlement Fund will be paid as a "Service Award" to Erica Heckle in recognition of her service to the Class Members.

11.6.    The Attorneys' Fees and Actual Expenses set forth in Paragraphs 11.2 and 11.4 shall be distributed by the Settlement Administrator to Class Counsel per instructions to be provided to the Settlement Administrator within five (5) business days after the Defendant funds the QSF.

11.7.    After the amounts described in Paragraphs 11.2, 11.3, 11.4 and 11.5 are deducted, the remaining funds (the "Net Settlement Fund") will be allocated among the Class Members.

11.8.    Because it is impossible to know which claims would have been successful, how much, if any, unpaid overtime would have been awarded each week on a class-wide basis, and/or whether a full compensatory award of liquidated damages would have been owed, the settlement payment amounts to be paid from the Net Settlement Fund are based on each Class Member's number of weeks of employment in a Covered Position.  Each Class Member was credited with

one (1) point for each week he/she worked in a Covered Position from February 18, 2015, to April 27, 2023. The total number of points were then divided into the Net Settlement Fund to determine the value of a point. The Settlement Payment to each Class Member is his/her number of points multiplied by the value of a point. Fifty percent (50%) of each such Settlement Payment will constitute backpay, and fifty percent (50%) will constitute liquidated damages.

11.9. The minimum Settlement Payment to any Class Member will be $100.00. The remaining amount in the Net Settlement Fund will be allocated to Class Members, as calculated by Class Counsel in the manner described in Paragraphs 11.8. The tentative Settlement Payment amounts to Class Members were provided to Defendant's counsel on June 6, 2023 (the "Settlement Distribution Data"). The amounts are tentative only in that if any Class Member presents a valid and timely dispute postmarked by the Response Deadline, with supporting documentation, that his/her employment dates in a Covered Position are incorrect, then the value of a point as discussed in Paragraph 11.8 will be adjusted, which will impact the Settlement Distribution Data but will not impact the amount of the Gross or Net Settlement Fund.

11.10. The Settlement Administrator shall provide Class Counsel with any valid disputes regarding the number of weeks in a Covered Position within five (5) days after the Response Deadline, and Class Counsel, will in turn, provide Defendant's Counsel and the Settlement Administrator with the final listing of Settlement Distribution Data within seven (7) calendar days after the Response Deadline.

11.11. All Settlement Payments will be paid by check.

## 12.   DISTRIBUTION OF SETTLEMENT CHECKS TO CLASS MEMBERS

12.1. Within fourteen (14) calendar days after the Defendant funds the QSF, the Settlement Administrator will distribute Settlement Payments to the Class Members

representing: (1) the backpay due as set forth in the Settlement Distribution Data less all applicable withholding taxes and deductions; (2) the amount of liquidated damages due under the Agreement as set forth in the Settlement Distribution Data; and (3) any Service Award owed. The Settlement Payments will state that they are valid for one hundred twenty (120) days.  In addition, the Settlement Administrator will issue an IRS Form 1099, checking box 3 other income, for each Class Member showing the amount of liquidated damages and Service Award paid (if any), and an IRS Form W-2 showing the amount of back pay in the year it was paid.

12.2.   Other than the withholding and reporting requirements stated in this Paragraph (Paragraph 12), Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement.

12.3.   In the event that any funds from the Net Settlement Fund are not cashed by the Class Members within the Cashing Period, those amounts will be remitted to the unclaimed property fund in the state in which the Class Member lives, and the Settlement Administrator shall notify such Class Member by First Class U.S. Mail. The Settlement Administrator shall provide Class Counsel and Defendant a list of all uncashed checks thirty (30) days before the end of the Cashing Period or at such other times as requested by Class Counsel or Defendant.

## 13.   TAXES

13.1.   It is each Class Member's ultimate obligation to pay the employee's share of appropriate federal, state, and local income taxes on all payments that lawfully qualify as income.  The Parties also agree that there must be proper withholding of federal, state, and local income taxes (with the state and local withholdings based on each Class Member's current state of residence), and the employees' share of FICA and Medicare on all settlement payments

representing back wages. The Settlement Administrator will be responsible for calculating, withholding, and depositing or remitting the required amounts for federal, state, and local income taxes on all payments representing back wages, and the employees' share of FICA and Medicare. The Settlement Administrator will be responsible for preparing and distributing all appropriate tax forms associated with payments made by the Settlement Administrator, including, as appropriate, Form W-2 and Miscellaneous and/or interest Income Form 1099.

13.2.    The Settlement Administrator will be responsible for calculating and paying applicable FUTA, SUTA, and the employer's share of FICA and Medicare on all Settlement Payments representing back wages and will remit those payments to the appropriate taxing authorities and will give Defendant reasonable notice of such payments. The Defendant will be responsible for funding the QSF to pay the employer's share of all payroll taxes as described in Paragraphs 10.3 and 11.5 above. Within five (5) calendar days after the Final Approval Date, the Settlement Administrator will inform the Parties of its calculations, the amount of withholding, and the amounts to be deposited and paid, in advance of any submission to government authorities or distributions to Class Members. The Parties will have five (5) business days to provide written notice to the Settlement Administrator that they agree with the calculations or to provide corrected calculations. If no such notice or calculations are provided by the Parties, the Settlement Administrator may proceed with such submission or distribution on the assumption that its underlying calculations are correct.

13.3.    The Settlement Administrator shall provide the Parties with a copy of any communications sent to Class Members.

13.4.    To the extent permitted by law, in no event shall any Settlement Payment to a Class Member or any Service Award create any credit or otherwise affect the calculation of or

eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

## 14.    RELEASE BY CLASS MEMBERS

14.1.    Upon the Final Approval Date, Plaintiff, and all Class Members who have not timely opted out of the Settlement, on behalf of themselves and each of their heirs, representatives, successors, assigns and attorneys, shall be deemed to release and forever discharge all Released Claims of whatever nature against the Released Parties.  These Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims.  However, on the Final Approval Date, Plaintiff and Class Members who have not timely opted out of the Settlement, shall be deemed to have, and by operation of the Final Approval Order dismissing the Litigation with prejudice, shall have, fully, finally, and forever settled and released any and all of the Released Claims without regard to the subsequent discovery or existence of such different or additional facts.

14.2.    The Plaintiff and Class Members who have not timely opted out of the Settlement by submitting a valid Opt Out Statement, forever agree that they shall not institute any action seeking, nor accept, back pay, overtime premiums, penalties, liquidated damages, punitive damages, interest, penalties of any nature, attorneys' fees and costs, or any other relief from any

other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against the Released Parties, for any period through June 27, 2023, arising from any claims released in this Paragraph 14. This release shall become effective as of the Effective Date.

**15.    DISMISSAL OF ACTION**

15.1.    Plaintiff agrees to dismissal of the Litigation with prejudice upon satisfaction of the conditions and timeline specified herein that result in the Court's entry of an order granting the Parties' Joint Motion for Final Approval of Settlement.

**16.    RESOLUTION OF FUTURE DISPUTES**

16.1.    The United States District Court for Southern District of New York will have continuing jurisdiction to interpret and enforce this Agreement and to hear and adjudicate any dispute or litigation arising from the Agreement except as otherwise provided herein.

**17.    DOCUMENTS**

17.1.    Counsel for the Parties will, three hundred sixty-five (365) days after the Settlement Administrator mails the Settlement Payments to the Class Members, destroy or return to counsel for the producing party all documents and information (including electronically stored information) produced by the other Party or Parties during the course of the Litigation. This obligation supersedes any obligation, right, or timing otherwise provided for by Court or Local Rule. This Paragraph does not apply to publicly filed material or attorney work product. Moreover, Plaintiff and Class Counsel agree to uphold their duties and responsibilities under the parties' Stipulation and Order Governing the Treatment of Confidential Material, so-ordered by the Court on September 10, 2021, and agree to be bound by the terms and conditions of the order following the dismissal of the Action.

18.    **PARTIES' AUTHORITY**

18.1.    The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to its terms and conditions, which the Parties agree are the result of lengthy, intensive arm's length negotiations.

18.2.    The Parties acknowledge that throughout the settlement negotiations that resulted in this Agreement they have been represented by counsel who are experienced in FLSA and class action litigation of the state law wage and hour claims at issue, and that this Agreement is made with the consent and advice of counsel who have prepared the Agreement.

18.3.    Upon approval by the Court, this Agreement shall bind Plaintiff and all Class Members who have not timely opted out of the Settlement to all terms set forth in this Agreement, so long as such individual has not timely opted out of this settlement pursuant to the opt out procedures described herein in Paragraph 7.1.

18.4.    The Notice, in the form attached hereto as Exhibit A, will advise all Class Members of the binding nature of the release of claims described in this Agreement (see Paragraph 14), and that the release will have the same force and effect upon ever Class Member as if the Agreement were executed by each Class Member.

19.    **MUTUAL FULL COOPERATION**

19.1.    The Parties agree to cooperate fully to implement this Agreement, including but not limited to, executing such documents and taking such other action as is reasonably necessary to implement and effectuate the terms of this Agreement.

## 20.    ENFORCEMENT ACTIONS

20.1.    If any Party institutes any legal action, arbitration, or other proceeding against any other Party to enforce the provisions of this Agreement, the prevailing Party will be entitled to recover from the non-prevailing Party reasonable attorneys' fees and costs.

## 21.    MODIFICATION

21.1.    This Agreement and its Exhibit may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

## 22.    ENTIRE AGREEMENT

22.1.    This Agreement and its Exhibit and the final Settlement Distribution Data constitute the entire agreement between the Parties concerning the subject matter hereof.  No extrinsic oral or written representation or terms will modify, vary, or contradict the terms of this Agreement.

## 23.    CHOICE OF LAW/JURISDICTION

23.1.    This Agreement will be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, both in its procedural and substantive aspects, and the continuing jurisdiction of the United States District Court for the Southern District of New York.  This Agreement will be construed as a whole according to its fair meaning and intent and not in favor of any Party, regardless of who drafted or was principally responsible for drafting the Agreement or any specific term or condition thereof.

## 24.    COUNTERPARTS

24.1.    This Agreement may be executed in counterparts, and when Defendant and Plaintiff have executed at least one counterpart, each counterpart will be deemed an original, and

when taken together, will constitute one Agreement, which will be binding upon and effective as to all Parties.

## 25.    NO PRIOR ASSIGNMENTS; BINDING ON ASSIGNS

25.1.    The Parties represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged in this Agreement.

25.2.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, assigns, guardians, conservators, and court-appointed representatives.

## 26.    VOIDING THE AGREEMENT

26.1.    In the event this Agreement, or any amended version agreed upon by the Parties, is not approved by the Court, the Agreement will be null and void in its entirety and the Parties will revert to their respective positions prior to the Agreement, unless expressly agreed in writing by all Parties.

26.2.    If judicial approval of the Agreement is otherwise denied, the Parties agree in good faith to negotiate about appropriate revisions to such provisions rejected by the Court for a period not less than forty-five (45) calendar days following the date approval is denied, and to re-submit for the Court's approval.  The Parties will file a joint motion for a stay of the action during the period referred to in this Paragraph.

DocuSigned by:

_____
Erica Heckle
Plaintiff


Date: _____6/8/2023_____


_____
Matrix Absence Management, Inc.
Defendant


Date: _____


DocuSigned by:

_____
Molly A. Elkin
Sarah M. Block
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Tel.: (202) 833-8855
mae@mselaborlaw.com
smb@mselaborlaw.com


Date: _____6/9/2023_____


DocuSigned by:

_____
Evan B. Citron
Jamie Haar
599 Lexington Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 492-2500
evan.citron@ogletree.com


*Counsel for Defendant Matrix Absence Management Inc.*


Date: _____6/16/2023_____


DocuSigned by:

_____
Jack Siegel
Texas Bar No. 24070621
SIEGEL LAW GROUP, PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
Tel.: (214) 790-4454
jack@siegellawgroup.biz

Date: _____6/12/2023_____

_____Travis Hedgpeth_____
C75FC143646E451...

Travis M. Hedgpeth
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd
Suite 510
Houston, Texas 77056
Tel.: (512) 417-5716
travis@hedgpethlaw.com

Date: _____6/8/2023_____

*Counsel for Plaintiff and The Class*

DocuSign Envelope ID: 8E0CDA31-C538-4270-80E5-5B34A742C41C

26.2.   If judicial approval of the Agreement is otherwise denied, the Parties agree in good faith to negotiate about appropriate revisions to such provisions rejected by the Court for a period not less than forty-five (45) calendar days following the date approval is denied, and to re-submit for the Court's approval.   The Parties will file a joint motion for a stay of the action during the period referred to in this Paragraph.

_____
Erica Heckle
Plaintiff

Date: _____

DocuSigned by:

*Michael Askins, CFO* Michael Askins, CFO
B22C6D75952C459...
Matrix Absence Management, Inc.
Defendant

Date: 6/16/2023

_____
Molly A. Elkin
Sarah M. Block
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Tel.: (202) 833-8855
mae@mselaborlaw.com
smb@mselaborlaw.com

Date: _____

_____
Evan B. Citron
Jamie Haar
599 Lexington Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 492-2500
evan.citron@ogletree.com

*Counsel for Defendant Matrix Absence Management Inc.*

Date: _____

_____
Jack Siegel
Texas Bar No. 24070621
SIEGEL LAW GROUP, PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
Tel.: (214) 790-4454
jack@siegellawgroup.biz

*Exhibit A*

**[NAME]**
**[ADDRESS]**
**[CITY, STATE ZIP]**
**[Ref. No. ]**
**[SSN]**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ERICA HECKLE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:21-cv-01463 |
| | ) | |
| MATRIX ABSENCE MANAGEMENT, INC., | ) | |
| | ) | |
|     Defendant. | ) | |
| ———————————————————— | ) | |

# <u>NOTICE OF OVERTIME PAY CLASS ACTION SETTLEMENT</u>

### You are entitled to a payment from a class action lawsuit.
*A federal court has authorized this notice.  This is not a solicitation from a lawyer.*

The purpose of this Notice is to: (1) inform you about a Settlement in a Class Action lawsuit ("Lawsuit") under the New York Labor Law (NYLL) against Matrix Absence Management, Inc., ("Matrix" or "Defendant") in which you are a Class Member; (2) provide you with information on your share of the settlement monies; and (3) advise you of how your rights may be affected by this Settlement.

Your rights and options – and the deadlines to exercise them – are explained in this Notice. The Court in charge of this case must decide whether to approve the settlement.  Payments will be made if the Court approves the settlement. Please be patient.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, you will receive your share of the settlement monies described in this Notice and you will release any and all federal and state law wage and hour claims you may have against Matrix up through June 27, 2023. |
| **OPT OUT** | If you opt out by submitting an Opt Out Statement, you will not be part of the Lawsuit and you will not receive any settlement monies. If you opt out, you will not be subject to the release described in Section 7 below. |

| **OBJECT** | You can object to the settlement by following the procedures set forth in Section 9 below. If the Court rejects your objection, you will be bound by the terms of the settlement and will be provided your share of the settlement. If you object, you may appear at the Fairness Hearing to speak to the Court about the fairness of the settlement. |
|---|---|

## BASIC INFORMATION

### 1.      Why did I get this notice?

You have been identified by Matrix as a Class Member. You are receiving this Notice because Matrix's records show that you have worked as a Claims Examiner ("CE") assigned to the Hawthorne, New York office (in person or remotely) at any time since February 18, 2015. The Court ordered that you be sent this Notice and has authorized its contents. The Class includes all current and former Matrix employees since February 18, 2015, in positions titled Claims Examiner-STD, Claims Examiner-LOA, Claims Examiner-AMS at the Level 1, Level 2 and/or Senior Level who are/were classified by Matrix as exempt from overtime pay ("Covered Positions"). The Court ordered that you be sent this Notice because you have a right to know about a proposed settlement of this case, and about all of your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections are heard, payments will be mailed to you by the Settlement Administrator mailing this Notice. There are 200 Class Members, including you. This Lawsuit is known as *Heckle v. Matrix Absence Management, Inc.,* Case No. 7:21-cv-01463 (S.D.N.Y.).

### 2.      What is this Lawsuit about?

This Lawsuit is about whether Matrix was required to pay Plaintiff and Class Members overtime pay and failed to do so. A CE formerly employed by Matrix filed the Lawsuit in the U.S. District Court for the Southern District of New York on behalf of herself and all other individuals in the Covered Positions who have reported to the Hawthorne, New York office (either in person or remotely) at any time since February 18, 2015. Specifically, the Plaintiff alleges that Matrix violated the NYLL by failing to pay her and all other individuals in the Covered Positions overtime compensation, by failing to provide proper wage statements as a result of the failure to pay overtime, and by improperly misclassifying her and other individuals in the Covered Positions as exempt from the overtime requirements of the NYLL. Matrix denies the allegations in the Lawsuit and denies that it violated the law.

### 3.      Why is this a class action?

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. The people together are a "Class" or "Class Members."

### 4.      Why is there a Settlement?

The Court certified this lawsuit as a class action on December 14, 2022. Thereafter, the parties entered settlement negotiations and reached a settlement agreement with the assistance of an experienced mediator. The Court has not issued a final judgment in favor of Plaintiff or Defendant. Rather, to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have concluded that it is in their best interests to resolve and settle the action by entering into a settlement agreement. Accordingly, the Plaintiff who filed the Lawsuit and Matrix have reached a settlement agreement subject to final approval by the Court. Both sides believe they would have

prevailed in the case, but there was no final decision ruling in favor of either party. Instead, both sides agreed to a settlement.

## WHO IS INCLUDED IN THE SETTLEMENT

| **5.      How do I know if I am part of the settlement?** |
| --- |

Unless you affirmatively opt out, you are covered by the settlement.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| **6.      What does the settlement provide?** |
| --- |

Matrix has agreed to pay $4,250,000.00 to resolve the entire case. This amount will be allocated as follows: $2,784,815.86 will be paid to the Class Members ("Net Settlement Fund"); $15,000.00 will be allocated as a Service Award to the Plaintiff who brought the Lawsuit and who served as the Class Representative; $1,416,666.67 will be paid as attorneys' fees; $23,917.47 will be paid as litigation expenses; and $9,600.00 will be paid to the third party Claims Administrator for expenses associated with administering the Settlement.

Because it is impossible to know which claims would have been successful, how much, if any, unpaid overtime would have been awarded each week on a class-wide basis, and/or whether a full compensatory award of liquidated damages would have been owed, the settlement payment amounts are based on each Class Member's number of weeks of employment in a Covered Position. Each Class Member was credited with 1 point for each week he/she worked in a Covered Position from February 18, 2015, to April 27, 2023. The total number of points were then divided into the Net Settlement Fund to determine the value of a point. The Settlement Payment to each Class Member is his/her number of points multiplied by the value of a point. The approximate value of a point is $71.84.  You have a total of X points.  Accordingly, your approximate share of the Net Settlement Fund is $X.  Fifty percent (50%) of your Settlement Payment will constitute backpay, and fifty percent (50%) will constitute liquidated damages. The amounts are approximate in that if any Class Member presents a valid and timely dispute regarding the number of weeks worked in a Covered Position, the value of a point will decrease, and, as a result, each Class Member's Settlement Payments will be adjusted accordingly. Only timely disputes with supporting documentation, namely pay stubs showing your title and dates of employment, will be considered. To be timely, a dispute must be postmarked by the [DATE 45 days after Notice mailing] and sent to the Settlement Administrator at the address set forth in Paragraph 9 below.

The settlement monies allocated as backpay will be reported to the IRS for tax purposes on a W-2 form, while the remaining monies will be reported to the IRS for tax purposes on a 1099-MISC form. Neither Class Counsel nor Defendant make any representations concerning tax consequences of this settlement, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

The Class Representative and Class Counsel determined that the settlement allocations were fair after considering a number of factors including, litigation risk with respect to Defendant's exemption defenses, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, and risks related to proving that Plaintiff was suffered or permitted to work overtime given the remote nature of many Class Members' work.

| 7. | **What am I giving up?** |
|---|---|

If you do not affirmatively opt out of the settlement, and the Court grants final approval of the settlement, your claim will be dismissed with prejudice and you will fully release and discharge Defendant through June 27, 2023, from all federal and state law wage and hour claims asserted, or which could have been asserted, in the Complaint. This means that you cannot sue, continue to sue, or be party to any other lawsuit against Defendant regarding the state or federal wage and hour claims brought in this case. The Settlement Release provides that Class Members will be releasing all Released Claims which are defined as follows:

> "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Class Member who does not opt out has or might have, of any kind whatsoever, that relate to payment of wages by Defendant for hours worked through June 27, 2023, except to the extent that any such claim may not be waived as a matter of law. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims against Defendant for unpaid wages, minimum wages, overtime, late payment of wages, damages or relief of any kind including but not limited to the FLSA, NYLL, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation (including liquidated damages, penalties, interest, costs, attorneys' fees, and expenses of the settlement administrator); and (iii) any and all claims pursuant to or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 100 *et seq*., to the extent such ERISA claims are premised on an alleged failure to credit any Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including June 27, 2023.  The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment but not related to the payment of minimum and overtime wages including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state and local law, statutes, and regulations. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

| 8. | **Do I have a lawyer in this case?** |
|---|---|

The Court has decided that the Plaintiff's lawyers (Molly Elkin of McGillivary Steele Elkin LLP, Travis Hedgpeth of The Hedgpeth Law Firm, PC, and Jack Siegel of Siegel Law Group, PLLC) are qualified to represent you and the Class. These lawyers are called "Class Counsel." You will not pay any amount from your recovery for these lawyers. You do not need to retain your own attorney

to be able to participate. The lawyers will be compensated in accordance with Section 6 above.

## OBJECTING TO THE SETTLEMENT

| 9. | How do I tell the Court if I don't like the settlement? |
|---|---|

To object to the Settlement, a Class Member must file with the U.S. District Court for the Southern District of New York a written objection to the Settlement, and, if the Class Member intends to appear at the Fairness hearing, a written notice of their intention to appear, with copies to the Settlement Administrator at the address listed below, postmarked no later than DATE [45 days after mailing of the Notice]. The statement submitted ("Objection Statement") must set forth in clear and concise terms the legal and factual arguments supporting the objection. Any reasons not included in the Objection Statement will not be considered. The Objection Statement must also include the name, address, email, and telephone number for the individual making the objection.

Address of Claims Administrator

## OPTING OUT OF THE SETTLMENT

| 10. | How do I opt out of the settlement? |
|---|---|

If a Class Member intends to opt out of the Settlement, he or she must mail a written, personally signed statement ("Opt Out Statement") to the Settlement Administrator that states: "I request to be excluded from the settlement in *Heckle v. Matrix Absence Management, Inc.,* Case No. 7:21-cv-1463 VB (U.S.D.C. Southern District of New York). I affirm that I was employed by Defendant as an exempt employee in one of the positions identified in the Notice as being a Class Member and paid on a salary basis at some point in time from February 18, 2015, through April 27, 2023." The Class Member must also include his or her name, address, and telephone number(s). To be effective, the Opt Out Statement must be mailed to the Settlement Administrator via First Class U.S. Mail at the address listed in Paragraph 9 above, postage prepaid and postmarked by DATE [45 days after the mailing of Notice].

## THE COURT'S FAIRNESS HEARING

| 11. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a Fairness Hearing on_____ at the United States District Court for the Southern District of New York, Federal Building and United States Courthouse, 300 Quarropas St., White Plains, NY 10601-4150 in Courtroom _____. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| 12. | Do I have to come to the hearing? |
|---|---|

No. Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| **13.** | **May I speak at the hearing?** |
|---|---|

If you file a timely Objection to the Settlement, you may ask the Court for permission to speak at the Fairness Hearing. You must include the words "I intend to appear at the Fairness Hearing" in your Objection Statement, which must be filed according to the procedure described in Section 9 above. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection. You cannot speak at the hearing if you exclude yourself from the settlement.

## GETTING MORE INFORMATION

| **14.** | **Are there more details about the settlement?** |
|---|---|

This Notice summarizes the proposed settlement.  More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at the address set forth in Section 9. If you have other questions about the settlement, you can contact the Settlement Administrator at the address above or at the phone number below.

DATED:          [Insert Date of Mailing], 2023