# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Erica Heckle, | |
| Plaintiff, | Case No.  7:21-cv-1463 VB |
| v. | |
| Matrix Absence Management, Inc., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Molly A. Elkin
Sarah M. Block
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Tel.: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
smb@mselaborlaw.com

Travis M. Hedgpeth
Texas Bar No. 24074386
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Tele.: (281) 572-0727
travis@hedgpethlaw.com

Jack Siegel
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
5706 E Mockingbird Lane, Suite 115
Dallas, Texas 75206
Tel.: (214) 790-4454
jack@siegellawgroup.biz

*Counsel for Plaintiff and the Class*

Evan B. Citron
Jamie Haar
Ogletree, Deakins, Nash, Smoak
        & Stewart, P.C.
599 Lexington Ave., 17th Floor
New York, NY 10022
Phone: (212) 492-2068
Fax: (212) 492-2501
evan.citron@ogletreedeakins.com
jamie.haar@ogletreedeakins.com

*Counsel for Defendant*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  THE COURT'S PRELIMINARY APPROVAL ORDER ................................... 1

III. SETTLEMENT TERMS ..................................................................................... 2

IV.  ISSUANCE OF NOTICE AND RESULTS OBTAINED .................................. 4

    A. The Settlement Administrator Successfully Mailed Notices to 200 Class Members With None Deemed Undeliverable ................................................................. 4

    B. Three Individuals Self-Identified to the Claims Administrator and/or Class Counsel as Class Members Entitled to Participate in the Settlement ....................................... 4

    C. No Class Member Opted Out of or Objected to the Settlement .................................. 5

V.   LEGAL ANALYSIS ........................................................................................... 5

    A. Standard for Final Settlement Approval .................................................................. 5

    B. The Class Action Settlement is Fair, Reasonable and Adequate ............................... 6

        1.  *The Settlement is Procedurally Fair* ............................................................. 7

        2.  *The Settlement Satisfies the Nine* Grinnell *Factors* ..................................... 8

            a.  The Complexity, Expense, and Likely Duration of the Litigation (Factor 1) ....................................................................................................8

            b.  The Reaction of the Class (Factor 2) ................................................. 9

            c.  The Stage of the Proceedings and Amount of Discovery Completed (Factor 3)...................................................................................................10

            d.  The Risks of Establishing Liability and Damages and The Risks of Maintaining the Class Action Through Trial (Factors 4, 5, and 6) ........... 11

            e.  The Ability of Defendant to Withstand a Greater Judgment (Factor 7) .... 11

            f.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Risks of Litigation (Factors 8 and 9)................ 12

    C. The FLSA Settlement for Plaintiff Heckle is Fair, Reasonable, and Adequate ........ 14

**D. A Service Award to Plaintiff Heckle is Appropriate and Should be Approved ....... 15**

**E. The Settlement Administration Costs Should be Approved .................................... 166**

**VI.  CONCLUSION ................................................................................................................. 17**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beckman v. Keybank, N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) .............................................. 9, 15

*Bryant v. Potbelly Sandwich Works, LLC,* 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) .......... 17

*Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) ................................... 14

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ........................................ passim

*City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............... 7

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.2001) ............................................................. 6

*Fisher v. SD Prot. Inc.,* 948 F.3d 593 (2d Cir. 2020)............................................................... 15

*Flores v. Anjost Corp.,* 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ....................................... 16

*Hart v. RCI Hospitality Holdings, Inc.,* 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015).... passim

*Henry v. Little Mint, Inc.,* 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................................. 17

*Hernandez v. Loco 111 Inc.,* 2017 WL 6205809 (S.D.N.Y. Dec. 5, 2017) ............................. 13

*Hernandez v. Merrill Lynch & Co., Inc.,* 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ......... 16

*In re "Agent Orange" Prod. Liab. Litig*., 597 F. Supp. 740 (E.D.N.Y. 1984) ........................ 12

*In re Currency Conversion Fee Antitrust Litig*., 263 F.R.D. 110 (S.D.N.Y.2009) .................... 9

*In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................ 7, 10, 11, 12

*In re Sony SXRD Rear Projection Television Class Action Litig*., 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................................................................................................... 11, 12

*Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362 (S.D.N.Y. 2013) .............................. 14

*Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 9

*Manley v. Midan Rest. Inc.,* 2017 WL 1155916 (S.D.N.Y. Mar. 27, 2017) ............................ 16

*Matheson v. T-Bone Restaurant, LLC,* 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)............. 16

*Pinzon v. Jony Food Corp.,* 2018 WL 2371737 (S.D.N.Y. May 24, 2018).............................. 13

*Plizga v. Little Poland Restaurant Inc.,* 2016 WL 9307474 (S.D.N.Y. Jul. 18, 2016) ............ 14

*Raniere v. Citigroup Inc.,* 310 F.R.D. 211 (S.D.N.Y. 2015) ................................................ 15, 16

*Riedel v. Acqua Ancien Bath New York LLC,* 2016 WL 3144375 (S.D.N.Y. May 19, 2016) .. 15

*Sykes v. Harris,* 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ........................... 6, 7, 12

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ..................................... 14, 15

I.    **INTRODUCTION**

Subject to final Court approval, the Parties have settled the claims of the Plaintiff and the Rule 23 Class certified in this action (*see* Dkt. 72) for $4,250,000.00.[1] The settlement resolves all claims in the lawsuit. Specifically, it resolves Plaintiff's allegations that Defendant Matrix failed to properly compensate Plaintiff under the Fair Labor Standards Act (FLSA) and failed to properly pay Plaintiff and the Rule 23 Class Members under the New York Labor Law ("NYLL") for all overtime hours by wrongfully misclassifying them as exempt from coverage of those laws. The settlement also resolves derivative wage statement claims pursuant to the New York Minimum Wage Act and the New York Wage Payment Act.

In advance of the October 19, 2023, Fairness Hearing and consistent with Paragraph 9.2 of the Settlement Agreement (Dkt. 78-1), the Parties jointly submit this Memorandum of Law in support of the Parties' Joint Motion for Final Approval of Class Action Settlement. As set forth below, this settlement satisfies all of the criteria for final approval. Accordingly, the Parties respectfully request that the Court enter an Order finally approving the Settlement Agreement as fair, reasonable, and adequate.

II.   **THE COURT'S PRELIMINARY APPROVAL ORDER**

On June 16, 2023, the Parties submitted a Joint Motion for Preliminary Approval of Class Action Settlement, which set forth a detailed factual and procedural history of this litigation.[2] Dkt. 78. In that Motion, the Parties requested that this Court: (1) preliminarily approve the Settlement

---

[1] As discussed more fully *infra*, the Parties also agreed to settle the claims of three self-reporting individuals who should have been included in the original Class List provided by Defendant to Class Counsel, but were not, for $31,178.56 which will be added to the Net Settlement Fund.

[2] Along with this Joint Motion for Final Approval of the Settlement Agreement, Plaintiff contemporaneously filed her Unopposed Motion for Approval of Attorneys' Fees and Expenses, supporting memorandum, and exhibits. As set forth in Paragraph 9.4 of the Settlement Agreement (Dkt. 78-1), Defendant does not oppose Class Counsel's request for attorneys' fees and expenses.

Agreement; (2) approve the Notice of Overtime Pay Class Action Settlement; (3) appoint Rust

Consulting, Inc. ("Rust") as the Settlement Administrator; (4) enjoin Class Members from filing

or prosecuting any claims, suits or administrative proceedings regarding claims released by the

Agreement unless and until such Class Members have filed timely and valid Opt Out Statements

with the Settlement Administrator; and (5) set a Final Approval and Fairness Hearing ("Fairness

Hearing") no earlier than ninety-five (95) days from the date of the Preliminary Approval Order.

*Id.* The Court granted the Parties' Motion on June 28, 2023. Dkt. 79. Specifically, the Court issued

an Order preliminarily approving the Settlement Agreement, ordering issuance of settlement

Notice to Class members, appointing Rust as the claims administrator, and ordering the Parties to

appear for a Fairness Hearing on October 19, 2023, at 10:00 am. *Id.*

III.    **SETTLEMENT TERMS**

A detailed background regarding the arm's-length settlement negotiations between the

Parties, and the terms of the Settlement Agreement that resulted from those negotiations, are set

forth in the parties' Memorandum in Support of the Joint Motion for Preliminary Approval of Class

Action Settlement. Dkt. 78. The terms of the Settlement Agreement (Dkt. 78-1) have not changed

since June 28, 2023, the date of preliminary approval of the settlement. However, as set forth below

in Section IV.B, the Parties have agreed to increase the amount of the Net Settlement Fund by

$31,178.56 so that three individuals who were not included in the Class List provided by Defendant

to Class Counsel, but who should have been included, will be paid a settlement share using the

same calculation methodology used for the 200 original Class Members (i.e., $71.04 x number of

weeks as a Claims Examiner reporting to the Hawthorne, NY office). Dkt. 83-1, Second

Declaration of Molly A. Elkin ("Elkin Decl."), ¶ 29.[3] These three individuals understand that they are now Class Members and that they are subject to the same Release as the original 200 Class Members. *Id.*

Pursuant to Paragraph 10.4 of the Settlement Agreement, Defendant will deposit the Gross Settlement Fund of $4,250,000, plus the employer's share of applicable payroll taxes, into a Qualified Settlement Fund ("QSF"), within 14 days of the date on which the Final Approval Order is no longer appealable (or, if an appeal is filed, the date on which such appeal is final). Dkt. 78-1, ¶¶ 3.1, 10.4, 10.5. The Gross Settlement Fund is comprised of: (1) Court-approved Settlement Payments to Class Members; (2) Attorneys' fees and actual expenses of Class Counsel as awarded by the Court (in the amount of $1,416,666.67 in fees and $23,917.47 in expenses); (3) Service Award to Plaintiff, as awarded by the Court (of $15,000); (4) Settlement Administration Costs (capped at $9,600.00); and (5) taxes that are withheld and tendered by the Settlement Administrator on behalf of Class members with respect to any Settlement Payments. *Id.* ¶¶ 10.4, 11.2, 11.3, 11.4, 11.5. Once the amounts for numbers (2) through (4) are deducted from the Gross Settlement Fund, the remaining funds, the Net Settlement Fund, will be allocated among the Class Members. *Id.* ¶ 11.7. 50% of each Settlement Payment will constitute backpay, and 50% of each Settlement Payment will constitute liquidated damages. *Id.* ¶ 11.8. Distribution of any settlement monies to opt-in and Rule 23 class members shall proceed in accordance with Sections 11 and 12 of the Settlement Agreement.

Three individuals contacted the Parties and the Settlement Administrator claiming they should have been included in the Class but were not ("self-reporters"). Elkin Decl., ¶ 29. Following

---

[3] The Second Declaration of Molly A. Elkin is filed as an attachment to Plaintiff's Unopposed Motion for an Award of Attorneys' Fees, at Docket 83-1.

an investigation by Class Counsel, the Parties agreed that the self-reporters should have been included in the Class, and had they been included, they would have received $31,178.56 between them. *Id.* Rather than have that money come from the other 200 Class Members' settlement awards, Defendant will deposit an additional $31,178.56 into the QSF for distribution to the three self-reporters when it deposits the Gross Settlement Fund into the QSF. *Id.*

## IV.   ISSUANCE OF NOTICE AND RESULTS OBTAINED

### A. The Settlement Administrator Successfully Mailed Notices to 200 Class Members With None Deemed Undeliverable

On July 13, 2023, Defendant provided Rust with the names, mailing addresses, and applicable employment information for 200 Rule 23 Class Members. Exhibit 2, Declaration of Jennifer Mills for Rust Consulting, Inc. ("Rust Decl."), ¶ 7.

On July 19, 2023, Rust mailed 200 Settlement Notices. *Id.* ¶ 9. Rust performed address traces on the five (5) Class Notices that were returned as undeliverable. *Id.* ¶ 10. Of the five traces performed, current addresses were obtained for each individual and Notices were promptly remailed. *Id.* Two Notices were returned by the Post Office with forwarding addresses attached, and Rust promptly remailed those Notices. *Id.* ¶ 11. None of the remailed Notices were returned as undeliverable. *Id.* ¶ 10.

### B. Three Individuals Self-Identified to the Claims Administrator and/or Class Counsel as Class Members Entitled to Participate in the Settlement

After issuance of the Settlement Notice, three individuals who were not on the Class List of 200 Class Members provided to Class Counsel by Defendant learned about the Settlement and contacted Class Counsel and the Claims Administrator requesting to participate. Elkin Decl., ¶ 29. Class Counsel obtained information from each of the three self-reporters and confirmed that they met the Class definition and as, such, should have been eligible to participate in the Settlement.

4

Counsel for Defendant agreed. *Id*. The Parties ultimately agreed that these three individuals should participate in the Settlement, and, significantly, that their settlement monies should not be paid out of the previously negotiated Net Settlement Fund intended only for the 200 individuals on the original Class List. *Id.* Using the same methodology to calculate damages that was used for the original 200 Class Members, the Parties agreed that the three self-reporters are entitled to a total of $31,178.56. *Id.* The self-reporters will be subject to all of the other terms and conditions of the Parties' Settlement Agreement, including the Release. *Id.* Accordingly, at the same time that Defendant funds the QSF pursuant to the Settlement Agreement, it will also deposit the additional $31,178.56 (and the employer's share of payroll taxes) into the QSF. *Id.*

### C.  No Class Member Opted Out of or Objected to the Settlement

The Settlement Notices advised Class Members of their right to object to the Settlement and of their right to opt-out. Dkt. 78-3. *See also* Rust Decl. ¶ 9. The Settlement Notice also informed Class Members that the deadline to object to or opt out of the Settlement was September 5, 2023. *Id.* Rust did not receive any exclusion requests or objections to the Settlement. Rust Decl. *Id.* ¶¶ 15-16.

In addition, Class Members were given a right and opportunity to dispute the number of weeks of eligibility assigned to them, which determines the damages owed to each Class Member. Dkt. 78-1, ¶ 11.8; Dkt. 78-3. Rust did not receive any dispute as to the weeks of eligibility assigned to the Class Members. Rust Decl. ¶ 14.

### V.   LEGAL ANALYSIS

### A.  Standard for Final Settlement Approval

Under Rule 23 of the Federal Rules of Civil Procedure, a court may give final approval to a class action settlement only upon finding that it is "fair, adequate, and reasonable, and not a

product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). The court must assess both the procedural and substantive fairness of the settlement. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir.2001) ("The District Court determines a [class action] settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

With respect to procedural fairness, the court must "pay close attention to the negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id.*

With respect to substantive fairness, the district court must consider the nine factors enumerated in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell* Factors"). *Id.* The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the risks of litigation. *Grinnell Corp.,* 495 F.2d at 463.

### B.  The Class Action Settlement is Fair, Reasonable and Adequate

As set forth below, the Settlement Agreement is both procedurally and substantively fair. Not only does the Settlement result from arm's-length negotiation among experienced wage and hour counsel, but the Settlement also satisfies all of the nine *Grinnell* factors. As such, the Settlement Agreement should be approved as fair, reasonable and adequate.

6

1.   *The Settlement is Procedurally Fair*

A class action settlement enjoys a strong "presumption of fairness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel. *Wal–Mart,* 396 F.3d at 116; *see also In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019); *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014).

Here, as set forth in the Joint Motion for Preliminary Approval (Dkt. 78), settlement discussions between the Parties have been lengthy. The Parties participated in an initial Court-ordered mediation in June 2021, and when that was unsuccessful, they began discovery, including the exchange of documents and taking depositions. Following the Court's Decision and Order granting Plaintiff's Motion for Class Certification, the Parties participated in a voluntary, second mediation which occurred in person on April 27, 2023. The Parties' negotiations were principled, with each side basing their offers and counteroffers on Defendant's own payroll data and on estimates by Class Representative Heckle of the number of hours of unpaid overtime worked by TCEs, on average, each week. The negotiations were also based on the Parties' respective assessments of the law and the facts, and their individual assessment of litigation risks. Both sides attended the in-person April 2023 mediation with full authorization to approve a settlement agreement, and the full-day negotiations concluded, with the assistance of an experienced mediator, in the signing of a Term Sheet containing the principal terms of the Settlement Agreement. Thereafter, the Parties continued to make concessions and negotiate the terms of the Settlement Agreement, which they signed on June 16, 2023. Dkt. 78-1.

In addition, the Parties were represented throughout the litigation by experienced wage-and-hour counsel. As recognized by the Court in its Order granting class certification, Class Counsel are "experienced and qualified class action lawyers who specialize in wage and hour

actions, including those alleging misclassification. The resumes of the firms representing plaintiff (Dkt. Nos. 43, 44, 45) show each firm has been appointed class counsel in several different cases in federal courts, and that Molly A. Elkin of McGillivary Steele Elkin LLP, "'has won multi-million-dollar verdicts or recoveries' on behalf of a class." Dkt. 72 at 10. Similarly, Defendant has been vigorously represented by attorneys with Ogletree Deakins, a respected nationwide management-side law firm focusing exclusively on labor and employment matters.

Accordingly, the Settlement should receive a presumption of procedural fairness.

### 2. *The Settlement Satisfies the Nine Grinnell Factors*

As set forth below, the Settlement satisfies all nine of the *Grinnell* factors, which weighs in favor of final approval of the Settlement.

### a. The Complexity, Expense, and Likely Duration of the Litigation (Factor 1)

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving the settlement. *Hart v. RCI Hospitality Holdings, Inc.,* 2015 WL 5577713, at *7 (S.D.N.Y. Sept. 22, 2015) (quoting *Grinnell*). As explained in the Parties' Motion for Preliminary Approval, the litigation has not only been complex but lengthy and expensive, still with a long road ahead absent settlement. Absent settlement, the Parties would need to complete additional expensive discovery including, but not limited to, producing and analyzing voluminous records that capture work time including Class Member emails to and from supervisors, computer log-on and log-off times, and telephone logs. The Parties would also need to conduct expert witness depositions on damages models. Further, the Parties would have needed to engage in vigorous summary judgment briefing on, among other things, Defendant's exemption defense and whether liquidated damages are warranted, decertification briefing, as well as participate in trial

and subsequent appeals, which would not only be expensive but would prevent Class members from obtaining any recovery for several years, if at all.

Although Plaintiff believes her claims and those of the Class are strong, Defendant could succeed on its administrative exemption defense which would result in Plaintiff and the Class receiving ***nothing.*** Instead, the Agreement (with the supplemental payment to the self-reporters) provides 203 Class Members with substantial recovery now, rather than after further litigation including summary judgment, trial, and likely appeal without any guarantee of success. *In re Currency Conversion Fee Antitrust Litig.,* 263 F.R.D. 110, 124 (S.D.N.Y.2009) (granting final approval where, absent settlement, the "action would have continued for years with ... a possible trial, and the inevitable post-trial motions and further appeals"); *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value."). *See also Sykes v. Harris,* 2016 WL 3030156, *12 (S.D.N.Y. May 24, 2016)). Settlement now not only eliminates these litigation risks, but also provides the Class with relief without further delay. *Hart,* 2015 WL 5577713 at *8. As such, this factor weighs in favor of final approval.

**b.   The Reaction of the Class (Factor 2)**

"A positive reaction of the class to the proposed settlement favors its approval by the Court…Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement." *Hart,* 2015 WL 5577713, at *8 (internal citations and quotations omitted). *See also Beckman v. Keybank, N.A.,* 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (the level of participation and lack of objections "demonstrate[] that the class approves the settlement and supports final approval"). Such is the case here, where all of the

Notices were eventually delivered successfully and none of the 200 Class Members objected to the settlement, opted out, or disputed their allocated settlement amounts. Rust Decl. ¶¶ 14-16. Indeed, three additional individuals who were not on Defendant's Class list self-identified and requested to participate. Rust Decl. 13. Thus, the reaction of the Class has been nothing but positive, with a 100% (plus) participation rate. Therefore, this factor supports final settlement approval.

### c.  The Stage of the Proceedings and Amount of Discovery Completed (Factor 3)

"This *Grinnell* factor inquires whether the parties had adequate information about their claims… such that counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Hart,* 2015 WL 5577713, at *10 (internal citations and quotations omitted). *See also In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 699 ("The relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Here, the case is at an advanced stage of the proceedings. The Parties have completed a substantial amount of discovery, including the exchange of documents and took numerous depositions, including Plaintiff's deposition and two Rule 30(b)(6) depositions. Additionally, and prior to the second mediation, the Parties exchanged pay data on a class-wide basis, which enabled the Parties to meaningfully engage in settlement negotiations. Thus, discovery has advanced far enough to allow the Parties to resolve this dispute responsibly. This factor, therefore, supports final approval of the settlement.

### d. The Risks of Establishing Liability and Damages and The Risks of Maintaining the Class Action Through Trial (Factors 4, 5, and 6)

Although Plaintiff believes her claims and those of the Class are strong, there is no guarantee that Plaintiff and the Class would succeed on summary judgment and/or trial. If the Parties were to engage in summary judgment briefing, a multi-day jury trial, and possible appeal, Defendant could succeed on its administrative exemption defense which would ultimately result in Plaintiff and the Class receiving nothing.

Additionally, as this Court has explained, "[a]lthough the risk of maintaining a class through trial is present in every class action…this factor nevertheless weighs in favor of settlement where it is likely that defendant[] would oppose class certification if the case were to be litigated." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 694. The same is true here, where Defendant vigorously opposed Plaintiff's motion for class certification, *see* Dkt. 60, and would try to decertify the class at a later stage. Again, if Defendant were to be successful, the Class would receive nothing. Because the Parties' settlement eliminates the risks of continued litigation, these factors weigh in favor of final settlement approval.

### e. The Ability of Defendant to Withstand a Greater Judgment (Factor 7)

Notably, "the possibility that a defendant could have sustained a greater judgment is not determinative of substantive unfairness where, as here, the other *Grinnell* factors weigh in favor of approval." *Hart,* 2015 WL 5577713, at *11 (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.,* 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)). This is particularly true where a defendant is a large corporation. *See In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 696 ("Some courts have held, however, that in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and,

against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Sony,* 2008 WL 1956267, at *8. Thus, while Matrix, a large corporation, could withstand a greater judgment, this fact alone does not undermine the reasonableness of the instant settlement, particularly where all other *Grinnell* factors weigh in favor of final approval.

**f.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Risks of Litigation (Factors 8 and 9)**

A court must also analyze the range of reasonableness of the settlement fund in light of the possible recovery, as well as its reasonableness in light of all the attendant risks of litigation. *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d at 696. The amount achieved "is not to be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Hart,* 2015 WL 5577713, at *11 (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987)). Thus, the Court need only find that the settlement falls within the "range of reasonableness," as this will account for the "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in litigation. *Wal-Mart Stores,* 396 F.3d at 119. As the *Grinnell* court explained, "[i]n fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell,* 495 F.2d at 455 n.2.

Here, the settlement amount falls within the range of reasonableness, particularly as the Class will receive significant monetary recovery. As described in the Motion for Preliminary Approval, the settlement represents approximately 38% of what Plaintiff and the Class could recover at trial on what would be their best day. This percentage is calculated by comparing what

Plaintiff and the Class recovered to what they potentially, on their best day, could have recovered if the jury: (1) found that the administrative exemption does not apply; (2) awarded each Class Member two hours of overtime pay for every day worked since February 15, 2015; (3) awarded a full award of damages for wage statement violations under NYLL § 195, and if (4) the Court awarded liquidated damages equal to the backpay. Dkt. 78-4, ¶ 8. Obtaining an amount equal to 38% of what would likely be a best-day recovery is well within the range of recovery this Court has found to be reasonable. *See, e.g., Hernandez v. Loco 111 Inc.,* 2017 WL 6205809, *2 (S.D.N.Y. Dec. 5, 2017) (settlement amount representing 37% of anticipated maximum recovery in hybrid FLSA/NYLL case is reasonable); *See also Pinzon v. Jony Food Corp.,* 2018 WL 2371737, *2 (S.D.N.Y. May 24, 2018) ("Settling for even thirty percent of the total potential recovery is significant enough in this case to weigh in favor of approval—particularly in light of … the value to Plaintiff of receiving such a large lump sum without the risk and delay inherent in litigation.").

Further, as set forth in the Parties' Motion for Preliminary Approval, Plaintiff and the Class face substantial risk in obtaining the maximum recovery described above even if Defendant fails to establish entitlement to its affirmative administrative exemption defense. For example, a jury could find that Plaintiff and TCEs worked fewer than two hours of overtime every day for the last six years, or that no damages are owed for the derivative wage statement violations under NYLL § 195. Further, if the Court found that Defendant "proved a good faith basis to believe that its underpayment of wages was in compliance with the law" the Court could choose not to award liquidated damages. NYLL § 198(1-a). Under these scenarios, a potential outcome, which would still be a victory for Plaintiff and the Class, would be damages based on 30 minutes of overtime pay per day, without any additional liquidated damages or wage statement damages. On a class-wide basis, this scenario yields a recovery of $1,534,629.00; the instant settlement exceeds this

13

amount by more than 2.7 times. Dkt. 78-4, ¶ 9. Moreover, Defendant could be successful in decertifying the Class, resulting in no recovery for any Class Member other than Plaintiff Heckle.

Accordingly, these last two *Grinnell* factors support final approval of the settlement.

### C.  The FLSA Settlement for Plaintiff Heckle is Fair, Reasonable, and Adequate

Plaintiff Heckle also asserts claims under the FLSA, which are largely duplicative of her NYLL claims and which will be resolved by the settlement. To be clear, she is not "double dipping." Instead, the damages associated with the resolution of her NYLL claims encompass her FLSA claims here. "A settlement that results in the dismissal of an FLSA claim with prejudice requires approval of the district court or the Department of Labor even where, as here, the claim was brought by a single plaintiff who never sought to represent a class." *Plizga v. Little Poland Restaurant Inc.,* 2016 WL 9307474, *2 (S.D.N.Y. Jul. 18, 2016) (citing *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016)). "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

Courts evaluating whether FLSA settlements are reasonable consider the following factors: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). *See also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020) ("District courts typically evaluate

14

the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*….”). In hybrid FLSA/NYLL cases such as this one, analysis of the *Wolinsky* factors is subsumed by analysis of the *Grinnell* factors. *See, e.g., Riedel v. Acqua Ancien Bath New York LLC,* 2016 WL 3144375, *7 (S.D.N.Y. May 19, 2016) (considering *Wolinsky* and *Grinnell* Factors together).

Accordingly, for all of the reasons set forth above in Section V.B, as well as those set forth in the Parties' Motion for Preliminary Approval (Dkt. 78), the settlement of Plaintiff's FLSA claims is fair and reasonable under the Second Circuit's standards and should be approved as final.

### D.  A Service Award to Plaintiff Heckle is Appropriate and Should be Approved

Courts in this Circuit have recognized that service awards "are common in class action cases and serve to compensate such plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman,* 293 F.R.D. at 483 (internal citation omitted). As this Court has explained, "[i]t takes courage for any employee to challenge her employer's workplace practices, and this is particularly true when the employer is a powerful [corporation]." *Raniere v. Citigroup Inc.,* 310 F.R.D. 211, 220 (S.D.N.Y. 2015).

Under the Settlement Agreement, a Service Award equal to $15,000.00 will be provided to Plaintiff Heckle, who contributed a significant amount of time and effort to bring these claims, which ultimately benefit the entire Class, at great risk to herself. Elkin Decl., ¶ 27. For example, Ms. Heckle expended a significant amount of effort collecting documents to help counsel gather facts for the Complaint and for two different mediations, both of which she participated in as the Named Plaintiff and Class Representative. *Id.* Plaintiff also sat for a lengthy deposition and was instrumental in helping Class Counsel prepare for settlement discussions, helping counsel to

understand the intricacies of the positions at issue and the Class Members' workload requirements, so that Class Counsel could zealously negotiate during mediation. *Id.* Plaintiff Heckle also participated in the mediation/settlement process, including by participating in the in-person mediation which ultimately led to the instant settlement. *Id.* Notably, the service award represents less than 0.4% of the total settlement fund. *Id.* ¶ 28. Additionally, every Class Member was notified of the Service Award and none objected. *Id.* ¶ 25.

Accordingly, a Service Award in the amount of $15,000.00, consistent with the terms of the Settlement Agreement and consistent with Service Awards approved in other Rule 23 Class Action cases, should be awarded to Plaintiff Heckle for her contributions to the Class. *Manley v. Midan Rest. Inc.,* 2017 WL 1155916, at *13 (S.D.N.Y. Mar. 27, 2017) (in hybrid FLSA/NYLL action, approving $15,000 service award to class representative, noting that this amount— approximately 1.64% of the settlement fund—"is well within the range of service awards recently approved by this District"); *Raniere,* 310 F.R.D. at 220 (awarding named plaintiff service awards in amounts of $20,000 and $15,000 each in hybrid FLSA/NYLL action); *Flores v. Anjost Corp.,* 2014 WL 321831, at *10 (S.D.N.Y. Jan. 29, 2014) (in hybrid FLSA/NYLL action, awarding service awards in the amount of $25,000 each); *Hernandez v. Merrill Lynch & Co., Inc.,* 2013 WL 1209563, at * 10 (S.D.N.Y. Mar. 21, 2013) (in hybrid FLSA/NYLL action, approving service awards to five class representatives in amounts of $15,000 each); *Matheson v. T-Bone Restaurant, LLC,* 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (in hybrid FLSA/NYLL case, approving service award to lead class representative in amount of $45,000).

### E.  The Settlement Administration Costs Should be Approved

Rust, a third-party settlement administrator, was retained by counsel for the Parties and appointed by the Court to administer the Settlement, including issuance of the Settlement Notice,

issuance of payment to Class Members, and maintenance of the Qualified Settlement Fund. Dkt. 78-1, ¶¶ 4.1, 6.1, 6.2, 8.1, 10.1, 10.2. Accordingly, Rust is entitled to payment under the Settlement Agreement. *See also, e.g., Bryant v. Potbelly Sandwich Works, LLC,* 2020 WL 563804, at *8 (S.D.N.Y. Feb. 4, 2020) (approving settlement administration costs of approximately $32,871 in hybrid FLSA/NYLL case); *Henry v. Little Mint, Inc.,* 2014 WL 2199427, at *17 (S.D.N.Y. May 23, 2014) (approving payment of settlement administration costs of $34,000 in hybrid FLSA/NYLL case).

Rust has expended $9.600.00 in administering the Settlement. Rust Decl., ¶ 17. As such, Rust requests reimbursement of this amount as set forth in the Settlement Agreement.

## VI.    CONCLUSION

For the reasons set forth above, and for those reasons set forth in the parties' Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. 78), as well as Plaintiff's contemporaneously filed Unopposed Motion for Approval of Attorneys' Fees and Expenses, the Parties respectfully request that the Court:

(1)    Grant final approval of the Settlement reached by the Parties in this action as embodied in their Settlement Agreement (Dkt. 78-1) as fair, reasonable, and adequate;

(2)    Approve the Service Payments to Plaintiff Heckle as set forth in the Settlement Agreement (Dkt. 78-1, ¶ 11.5);

(3)    Approve an award of attorneys' fees in the amount of $1,416,666.67, and expenses equaling $23,917.47, as set forth in the Settlement Agreement (Dkt. 78-1, ¶¶ 11.2, 11.4) and as supported by Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Expenses;

(4)    Approve payment of settlement administration costs to the Settlement Administrator in an amount equal to $9,600.00;

17

(5)     Approve payment of an additional $31,178.56 in backpay and liquidated damages to the three self-reporting individuals who were not included in the original Class List of 200 Class Members but should have been;

(6)     Enter judgment dismissing this action with prejudice in accordance with the Settlement Agreement (Dkt 78-1, ¶ 15.1); and

(7)     Retain jurisdiction over the interpretation and implementation of the Settlement Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the Settlement Agreement (Dkt. 78-1, ¶ 16.1).

Dated: October 12, 2023

Respectfully submitted,

*/s/ Molly A. Elkin*
Molly A. Elkin
Sarah M. Block
McGillivary Steele Elkin LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Tel.: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
smb@mselaborlaw.com

Travis M. Hedgpeth
Texas Bar No. 24074386
The Hedgpeth Law Firm, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Tele.: (281) 572-0727
travis@hedgpethlaw.com

Jack Siegel
Texas Bar No. 24070621
Siegel Law Group PLLC
5706 E Mockingbird Lane, Suite 115
Dallas, Texas 75206
Tel.: (214) 790-4454
jack@siegellawgroup.biz

*Counsel for Plaintiff and the Class*

*/s/ Evan B. Citron*
Evan B. Citron
Jamie Haar
Ogletree, Deakins, Nash, Smoak
        & Stewart, P.C.
599 Lexington Ave., 17th Floor
New York, NY 10022
Phone: (212) 492-2068
Fax: (212) 492-2501
evan.citron@ogletreedeakins.com
jamie.haar@ogletreedeakins.com

*Counsel for Defendant*

19

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that, on October 12, 2023, the foregoing document and exhibits were filed with the Court through the Court's CM/ECF filing system, which will serve copies all Counsel of Record who have entered appearances in this matter.

*/s/ Molly A. Elkin*
Molly A. Elkin